Wisconsin DEPARTMENT OF REVENUE,
Petitioner-Appellant,

v.

DOW JONES & COMPANY, INC., Respondent.

Court of Appeals

*No. 88–0989. Argued November 17, 1988.—Decided January 26, 1989.*

(Also reported in 436 N.W.2d 921.)

873

■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■■■■■■

For the petitioner-appellant there were briefs by *Donald J. Hanaway,* attorney general, and *Gerald S. Wilcox,* assistant attorney general, and oral argument by *Gerald S. Wilcox,* assistant attorney general.

For the respondent there were briefs by *Kent I. Carnell* and *Jerome M. Ott,* and *Lawton & Cates, S.C.,* of Madison, and *Charles F. Feldman* and *Richard J. Tofel* and *Gibson, Dunn & Crutcher,* of New York, New York, and oral argument by *Richard J. Tofel.*

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J. The Department of Revenue (DOR) appeals from a judgment affirming an order of the Tax Appeals Commission (TAC). The issue is whether Dow Jones Company, Inc., is required to pay sales tax on the teleprinters it provided to certain of its "news service" clients. TAC concluded that Dow Jones' provision of the teleprinters to its clients was incidental to the performance of a service within the meaning of Wis. Adm. Code, sec. Tax 11.67(1),[1] and was therefore

---

[1]Wisconsin Adm. Code, sec. Tax 11.67(1) provides:

> When a transaction involves the transfer of tangible personal property along with the performance of a service, the true objective of the purchaser must be considered to determine whether such transaction is a sale of tangible personal property or the performance of a service with the transfer of property being merely incidental to the performance of the service. If the objective of the purchaser is to obtain the personal property, a taxable sale of that

exempt from sales tax. Because that conclusion is reasonable, we affirm.

Dow Jones is the publisher of the Dow Jones News Service. Until the mid-1960's, all news service subscribers received the news service information exclusively from teleprinters. These teleprinters worked automatically, were not interactive, and were used solely to deliver the news service. Subscribers paid a single charge for the news service, including its delivery on a teleprinter. Dow Jones owned, insured, repaired and maintained the teleprinters, and retained the right to replace or remove them at any time.

Later, some subscribers preferred to receive the news service on video display devices instead of teleprinters. Dow Jones began to itemize on its invoices a separate, flat "equipment charge" for providing and maintaining the teleprinters to those subscribers who still used them. However, complete "hard copy" news service was available only on the teleprinters. Dow Jones would terminate the news service to any subscriber found using unauthorized equipment and would not hook up a subscriber to the news service if the subscriber wanted to get a hard copy of the news service information through a delivery mechanism other than a Dow Jones teleprinter.

In Wisconsin, for the years 1978 through 1981, Dow Jones received $433,632 in gross receipts from the

property is involved. However, if the objective of the purchaser is to obtain the service, a sale of a service is involved even though, as an incidence to the service, some tangible personal property may be transferred. Thus, a person performing business advisory, record keeping, payroll and tax services for small businesses is providing a service. Such person is the consumer, not the seller, of property such as forms and binders which [it] furnishes without separate charge as an incidence to the service.

equipment charge. DOR sent Dow Jones a "Notice of Sales and Use Tax Deficiency Determination" in the amount of $15,538.95 plus interest of $6,575.08 for the tax years 1978–81. The notice provided that the "[c]harges for the use of personal property consisting of printers in the possession of customers constitutes a rental and is subject to sales tax in Wisconsin. Sec. 77.51(4) Wis. Stats. and sec. 77.52(1) Wis. Stats." DOR denied Dow Jones' petition for redetermination. TAC reversed DOR's denial. TAC concluded that Dow Jones used the teleprinters incidentally in providing their news service within the meaning of Wis. Adm. Code, sec. Tax 11.67(1), and that the true objective of the transaction was not the transfer of personal property but the performance of a service. The circuit court affirmed TAC.

Our standard of review under ch. 227, Stats., is the same as the circuit court's. *Boynton Cab Co. v. ILHR Department,* 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). The interpretation of an administrative rule presents a question of law which we may review de novo. *Castle Corp. v. Rev. Dept.,* 142 Wis. 2d 716, 719, 419 N.W.2d 709, 710 (Ct. App. 1987). However, "[w]here a legal question is intertwined with factual determinations or with value or policy determinations … a court should defer to the agency which has primary responsibility for determination of fact and policy." *West Bend Education Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534, 539–40 (1984); secs. 227.57(8) and (10), Stats. In addition, since this appeal involves the review of a tax assessment, and is therefore a "class 1 proceeding," TAC "act[ed] under standards conferring substantial discretionary authority upon it." Sec. 227.01(3)(a). We may not substitute our judgment for

that of an agency on an issue of discretion. Sec. 227.57(8).

TAC reasoned that since the transaction in this case encompassed both a transfer of tangible personal property to a purchaser in conjunction with the rendition of services by the seller, it should look at the essence of the transaction to determine if it is fundamentally a sale of property or a performance of a service. TAC relied on *Janesville Data Center v. Dept. of Revenue,* 84 Wis. 2d 341, 346, 267 N.W.2d 656, 658 (1978), which held that it is the essence of a transaction, and not the nature of any one constituent part of a transaction, which determines the taxability of it.

DOR claims that the transfer of a teleprinter should be taxed as a separate transaction because news service subscribers have an option whether or not to use the teleprinters, and can receive the news service without accepting the teleprinters. This is inaccurate. Dow Jones provided two types of news service to its subscribers, one with hard copy and one without. The hard copy service was available solely through the teleprinter, and thus a subscriber to this service had no option whether to use a teleprinter.

DOR also argues that because Dow Jones made a separate equipment charge on its monthly invoices for maintenance of the teleprinter, Wis. Adm. Code, sec. Tax 11.67(1) should not apply, and the transaction should be taxed as a lease or rental under sec. 77.52(1), Stats.[2] DOR acknowledges our contrary holding in *Frisch, Dudek & Slattery v. Rev. Dept.,* 133 Wis. 2d 444, 449, 396 N.W.2d 355, 358 (Ct. App. 1986), where we

---

[2]Section 77.52(1), Stats., requires retailers to pay a sales tax on the gross receipts gained from leasing or renting personal property.

877

concluded that, even though the law firm in that case included a separate charge for photocopies on its invoices, this did not amount to a separately taxable sale. However, DOR seeks to distinguish *Frisch* because: (1) in *Frisch,* the photocopying charge was insignificant to the overall service charges and in this case the teleprinter charge is substantial; and (2) in *Frisch,* the photocopies were similar to the examples given in the section, i.e., forms and binders, while in this case the teleprinters are not so similar.[3] We do not think these are proper bases for distinguishing *Frisch.*

■

In *Frisch,* we focused on whether the purpose of the separate itemization was to make a profit. 133 Wis. 2d at 448–49, 396 N.W.2d at 357–58. "Here, the purpose of separate itemization was not to make a profit, but only to fairly distribute photocopying costs among clients in fair proportion." *Id.* at 449, 396 N.W.2d at 358. In this case, TAC found that equipment charges were passed through to hard copy subscribers. Because Dow Jones' purpose in separately itemizing the equipment charge was not to make a profit, *Frisch* supports TAC's

---

[3]DOR argues that the teleprinters are not *ejusdem generis* with the example of the forms and binders given in Wis. Adm. Code, sec. Tax 11.67(1), and that to ignore this rule would render this example surplusage. "The rule of *ejusdem generis* is not applicable unless the class or object to which the general word would be restricted is germane to the objectives of the statute." *State v. Campbell,* 102 Wis. 2d 243, 247, 306 N.W.2d 272, 274 (Ct. App. 1981). TAC did not restrict its application of the rule to the illustrative examples, but extended the rule to include the teleprinters. By implication, TAC did not consider that restricting the rule's application to the illustrative examples served the objectives of the rule. This is a policy determination, and we defer to TAC's interpretation because it is reasonable. *West Bend Education Ass'n,* 121 Wis. 2d at 12, 357 N.W.2d at 539–40.

application of Wis. Adm. Code, sec. Tax 11.67(1) to this case.

Wisconsin Adm. Code, sec. Tax 11.67(1) required TAC to determine the "true objective" of the transaction, i.e., whether it was a sale of tangible personal property with a performance of a service incidentally involved, or whether it was a performance of a service with a transfer of tangible personal property incidentally involved. This is a legal question. However, it is one of those legal questions intertwined with factual, value and policy determinations. Therefore we should defer to TAC's conclusions as long as its conclusions are reasonable. *West Bend Education Ass'n,* 121 Wis. 2d at 13–14, 357 N.W.2d at 540.

TAC concluded that the true objective of the transaction was to obtain a service with a transfer of property incidentally involved. TAC found that only news service subscribers could obtain teleprinters, that a teleprinter's sole purpose was to transmit the hard copy of the news service reports, and that a teleprinter provided the only method to receive the complete hard copy service. These facts support TAC's conclusion that the teleprinter was incidental to the performance of a service.

TAC's determination is also in accord with the general rule we noted in *Frisch,* that a "tax may be imposed only by clear and express language, and all ambiguities as to the applicability of a tax must be resolved in favor of the taxpayer." 133 Wis. 2d at 449, 396 N.W.2d at 358. TAC's conclusion is reasonable, does not conflict with agency rules, policies or practices, and it does not violate statutory or constitutional

provisions. Therefore we uphold it. Sec. 227.57(8), Stats. Because DOR does not challenge TAC's conclusion that the news service was not within any of the taxable services listed under sec. 77.52(2)(a), Stats., we need not address that issue.[4]

*By the Court.*—Judgment affirmed.

---

[4]TAC considered the following parts of sec. 77.52(2)(a), Stats., relevant to this case:

  The tax imposed herein applies to the following types of services:

  . . . .

  4. The sale of telephone services of whatever nature including, in addition to services connected with voice communication, any services connected with the transmission of sound, vision, information, data or material other than by voice communication, and connection, move and change charges . . . except interstate service . . . .

  . . . .

  11. The producing, fabricating, processing, printing or imprinting of tangible personal property for a consideration for consumers who furnish directly or indirectly the materials used in the producing, fabricating, processing, printing or imprinting.