TELEMARK DEVELOPMENT, INC., Petitioner-Appellant,†

v.

DEPARTMENT OF REVENUE, Respondent-Respondent.

Court of Appeals

*No. 97–3133. Submitted on briefs April 7, 1998.—Decided April 30, 1998.*

(Also reported in 581 N.W.2d 585.)

†Petition to review denied.

810

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Catherine M. Doyle* of *McCarty, Lenz & Tolkan, S.C.*, of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

EICH, C.J. Telemark Development, Inc., appeals from an order affirming a decision of the Tax Appeals Commission. The commission ruled that Telemark's sales of "flexible" time-share interests in a condominium resort development are subject to sales tax.

Telemark argues on appeal that we should review the commission's decision *de novo* and conclude that the sales are not taxable. In the alternative, should we decide that the commission properly determined the issue, Telemark argues that taxing the sales violates both the equal protection and uniformity-of-taxation provisions of the Wisconsin Constitution. We conclude that the commission's decision is entitled to due-weight deference and affirm it as a reasonable interpretation and application of the law, and we reject Telemark's constitutional claims. We therefore affirm the order of the circuit court.

The facts were stipulated. The time-share condominium development consists of land and buildings that are part of a large resort complex near Cable, Wisconsin. Telemark sells one-week time-share units in the condominiums to purchasers via land contracts and deeds conveying a fee simple interest in the units. All contracts and deeds are expressly made subject to various "Condominium Documents"—including the rules and regulations of the Telemark Interval Owners Association, an organization consisting of all purchasers of the time-share units. Each purchaser pays an annual management and maintenance fee to the association, as well as a proportionate share of the real estate taxes assessed on the land and buildings. All time-share contracts and deeds are recorded in the office of the Bayfield County Register of Deeds, and the

developer, Telemark, pays applicable real estate transfer fees.

Two types of time-share purchase arrangements are available at the resort. Under the association's rules, the year is divided into two periods: "Guaranteed Use Periods," comprising weeks 7, 8, 26, 27 and 52, and "Flexible Use Periods," consisting of all other weeks of the year. Those who purchase "guaranteed" weeks are assured occupancy in a specific condominium during the week or weeks specified in their deeds or contracts. Purchasers of "flexible" time-shares, however, have no guaranteed occupancy periods and no specified condominium units. They must reserve a unit in advance—on a "first come–first serve" basis.[1] This appeal concerns only the taxation of sales of flexible time-shares.

Telemark does not hold a sales-tax seller's permit and did not collect sales taxes on any of its sales of flexible time-shares. After an audit, the Department of Revenue assessed delinquent sales taxes against Telemark in the amount of $481,958.70, including interest and penalty charges. Telemark appealed to the Tax Appeals Commission, and the commission confirmed the assessment, concluding that the sale of flexible time-shares is taxable under § 77.52(2)(a)1, STATS., which provides:

> (a) The tax imposed herein applies to the following types of services:
>
> 1. The furnishing of rooms or lodging to transients by . . . persons furnishing accommodations that are available to the public, irrespective of whether

---

[1] The association's rules expressly warn flexible time-share purchasers that if they fail to reserve a unit in a timely manner, they "may lose . . . use of the project for that year."

> membership is required for use of the accommoda-
> tions, including the furnishing of rooms or lodging
> through the sale of a time-share property . . . if the
> use of the rooms or lodging is not fixed at the time of
> sale as to the starting day or the lodging unit. In
> this subdivision, "transient" means any person
> residing for a continuous period of less than one
> month in . . . furnished accommodations available to
> the public.

The commission reasoned that:

> The . . . [r]ules explicitly provide that purchas-
> ers of time-share units during flexible use periods
> are not guaranteed a specific unit during a specific
> week at the time of purchase. Flexible use purchas-
> ers must reserve . . . particular units and weeks on a
> first come-first serve basis. Such purchasers are
> simply guaranteed the right to use an unspecified
> unit for one or more weeks . . . within the flexible
> use period. The transactional documents . . . make it
> clear that purchasers of time-share units during the
> flexible use periods do not receive the right to use a
> particular unit at a particular time at the time of
> the sale. Therefore, the first element of the statute
> is met.
>
> The only remaining issue is whether all of the
> sales at issue were to "transients" as that term is
> defined in [the statute]. Th[e] statute defines tran-
> sients as any person[s] residing for a continuous
> period of less than one month in . . . furnished
> accommodations available to the public. . . .
>
> The time-share units are sold only in one-week
> intervals (as opposed to month-long intervals), and
> even if someone purchased four consecutive unit-
> weeks, there is no guarantee that the purchaser
> would be able to use the four unit-weeks continu-
> ously. Therefore, the only inference that can be
> drawn is that all of the sales have been to persons

that will reside for a continuous period of less than one month. Therefore, the second element of the ... statute is met.

(Footnote omitted.)

Telemark sought judicial review in circuit court and the court affirmed the commission's decision.[2]

## I. Standard of Review

As has become commonplace in administrative review proceedings, the parties differ with respect to the appropriate standard of review. The winner before the agency—here the Department of Revenue—invariably argues that we must pay great deference to the agency's decision, and the loser—here Telemark—invariably argues for *de novo* review.

We begin with the proposition that the interpretation of statutes, and their application to found or stipulated facts, present questions of law for the courts. We have often held, however, that, in recognition of the expertise and experience administrative agencies possess, we will defer to their interpretation of statutes in certain situations.

Three levels of deference may be applied to the legal conclusions and statutory interpretations of administrative agencies. The highest—"great deference"—will be accorded an agency's decision when: (1) the agency is charged with the administration of the particular statute at issue; (2) its interpretation is one of long standing; (3) it employed its "expertise or spe-

---

[2] On appeal, of course, we review the commission's decision, not the circuit court's. *Sterlingworth Condominium Ass'n v. DNR*, 205 Wis. 2d 710, 720, 556 N.W.2d 791, 794 (Ct. App. 1996).

cialized knowledge" in arriving at its interpretation; and (4) its interpretation will provide "uniformity and consistency in the application of the statute." *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995). "Where great deference is appropriate, the agency's interpretation will be sustained if it is reasonable—even if an alternative reading of the statute is more reasonable." *Barron Elec. Coop. v. Public Serv. Comm'n,* 212 Wis. 2d 752, 761, 569 N.W.2d 726, 731 (Ct. App. 1997). We will also defer to an agency's interpretation " 'if it is intertwined with value and policy determinations' " inherent in the agency's decisionmaking function. *Id.* (quoted source omitted).

The second level of deference—"due-weight" deference—is appropriate when the agency has some expertise in the area in question, but has not developed that expertise to the extent that would necessarily place it in a better position to make judgments concerning the interpretation of the statute than a court. *Id.* at 762, 569 N.W.2d at 732. Here, too, we will sustain the agency's interpretation if it is reasonable—even if another interpretation is equally reasonable. Unlike the situation where great deference is appropriate, however, due-weight deference will not permit sustaining the agency's interpretation if another interpretation is *more* reasonable. *Id.* at 762–63, 569 N.W.2d at 732.

In cases at the third level, we consider the issues *de novo,* paying no deference at all to the agency's legal conclusions or statutory interpretations. These are cases where the issue before the agency is " 'clearly one of first impression,' " or where the agency's position on

the issue has been so inconsistent as to provide " 'no real guidance.' " *Id.* at 763, 569 N.W.2d at 732 (quoted source omitted). In that situation, " 'the weight to be afforded [the agency's] interpretation is no weight at all.' " *Id.* (quoting *Local No. 695 v. LIRC*, 154 Wis. 2d 75, 84, 452 N.W.2d 368, 372 (1990)).

Characterizing both the commission's and the circuit court's decisions as granting "summary judgment," Telemark refers us to *Wisconsin Finance Corp. v. Garlock,* 140 Wis. 2d 506, 410 N.W.2d 649 (Ct. App. 1987), and similar cases holding that the review of summary judgments is *de novo.* First, as we observed in *supra* note 2, we review the agency's decision, not the trial court's. Second, *Wisconsin Finance* and the other cases did not involve administrative appeals under ch. 227, STATS. They were civil actions where the trial court granted summary judgment pursuant to § 802.08, STATS. Administrative appeals are special proceedings to which ch. 802, STATS., and other provisions of the civil procedure code are generally inapplicable, and, as we have discussed above, the standards applicable to appellate review of agency decisions are well settled.[3]

■

Finally, Telemark suggests, without really arguing the point, that the commission's decision is one of "first impression" and not entitled to any degree of deference. As we noted in *Barron,* however,

---

[3] Telemark also cites *Booth v. American States Insurance Co.*, 199 Wis. 2d 465, 471, 544 N.W.2d 921, 923 (Ct. App. 1996), for the proposition that "[t]he application of a statute to an undisputed set of facts presents an issue of law, which we review de novo." Like *Wisconsin Finance Corp. v. Garlock*, 140 Wis. 2d 506, 410 N.W.2d 649 (Ct. App. 1987), *Booth* is inapposite, for it, too, involved an appeal from a trial court's legal conclusions, not those of an administrative agency.

The test is not . . . whether the [agency] has ruled on the precise—or even substantially similar—facts in prior cases. If it were, given the myriad factual situations to which the . . . [statute] may apply, deference would indeed be a rarity. Rather, the cases tell us that the key in determining what, if any, deference courts are to pay to an administrative agency's interpretation of a statute is the agency's experience in administering the particular statutory scheme—and that experience must necessarily derive from consideration of a variety of factual situations and circumstances. Indeed, we have recognized in a series of cases that an agency's experience and expertise need not have been exercised on the precise—or even substantially similar—facts in order for its decisions to be entitled to judicial deference.

*Barron*, 212 Wis. 2d at 764, 569 N.W.2d at 732 (footnote omitted).

Without question, the commission has considerable experience in the administration of the sales-tax statutes, and it has applied the provisions of § 77.52, STATS.—a statute it is charged to enforce and administer—in a variety of situations. *See, e.g., Sanfelippo v. DOR,* 170 Wis. 2d 381, 490 N.W.2d 530 (Ct. App. 1992) (cab company's lease of taxis to drivers); *DOR v. Dow Jones & Co.,* 148 Wis. 2d 872, 436 N.W.2d 921 (Ct. App. 1989) (charges for use of teleprinters by customers of a news service);[4] *City of Racine v. DOR,* 115 Wis. 2d 510,

---

[4] We deferred to the commission's interpretation of administrative rules in *DOR v. Dow Jones & Co.*, 148 Wis. 2d 872, 876–77, 436 N.W.2d 921, 923 (Ct. App. 1989), because the issue involved " 'a legal question . . . intertwined with factual determinations or with value or policy determinations,' " and also because tax assessments involve " 'substantial discretionary

340 N.W.2d 741 (Ct. App. 1983) (gymnasium fees charged to participants in city sports leagues).

The commission has, in short, developed broad expertise in the area, but has not had adequate opportunity to develop particular expertise on the question presented here. For those reasons, and also because its application of § 77.52(2)(a)1, STATS., to the facts of this case necessarily implicates value and policy judgments, we believe it is appropriate to pay due-weight deference to the commission's decision—affirming it if it is reasonable, unless another interpretation is more reasonable.

## II. Reasonableness of the Commission's Decision

Telemark has the burden of establishing that the commission's interpretation is unreasonable; the department does not have to justify the commission's interpretation. *Harnischfeger*, 196 Wis. 2d at 661, 539 N.W.2d at 102. "An agency's interpretation of a statute is reasonable if it accords with the language of the statute, the statute's legislative history, and the legislative intent; if the interpretation is consistent with the constitution, the statute read as a whole, and the purpose of the statute; and if the interpretation is consistent with judicial analyses of the statute." *Lisney v. LIRC*, 171 Wis. 2d 499, 507, 493 N.W.2d 14, 16 (1992). An interpretation is unreasonable if it directly contravenes the language of the statute, is plainly contrary to the legislative intent underlying the statute, or

authority' " on the agency's part which we should be loath to interfere with. (Quoted sources omitted.)

lacks a rational basis. *Harnischfeger,* 196 Wis. 2d at 662, 539 N.W.2d at 103.

Section 77.52(2)(a)1, STATS., taxes the furnishing of rooms or lodging to transients that are available to the public, including those sold as time-shares, "if the use of the . . . lodging is not fixed at the time of sale as to the starting day or the lodging unit." The statute defines "transient" as a person residing in such accommodations "for a continuous period of less than one month." *Id.*

Telemark first argues that the commission's application of the statute is unreasonable and contrary to law because it is engaged in sales of time-shares, and selling does not constitute a "service" within the meaning of the introductory language of the subsection. As the commission specifically noted in its decision, however, the statute defines the particular "service" at issue as the "furnishing of . . . lodging," and Telemark has not persuaded us that the legislature cannot reasonably term such an activity a "service." Indeed, the Legislative Fiscal Bureau's summary of the intent underlying adoption of the "time-share" language of § 77.52(2)(a)1, STATS., was to "[c]larify that the furnishing of rooms or lodging through the sale of a time-share property is subject to the sales tax if the use of the accommodations is not fixed at the time of the sale as to the starting day or the lodging unit." Legislative Fiscal Bureau, Summary of Budget Provisions (Dec. 1989).

Citing a law-dictionary definition of the phrase "to furnish" as "[t]o supply or provide in any way other than by sale," Telemark next argues that, as a result, the "furnishing" of lodging cannot include a sale. We are not persuaded. We note that other "services" taxed by § 77.52(2)(a), STATS., include "[t]he *sale* of admissions to . . . entertainment or recreational events," as

well as "[t]he *sale* of " telecommunications, cable television and landscaping services. Section 77.52(2)(a)2, 5, 12 and 20 (emphasis added).

Telemark next argues that a purchaser of flexible time-shares cannot reasonably come within the purview of the statute because the accommodations are not available to the public; in Telemark's words, they "are available only to unit owners." According to Telemark, the sale of the time-share unit occurs only once, and, once sold, a unit may no longer be held out for sale, rent, or use by the public. The commission, responding to that argument, states that Telemark's position "reads an additional requirement into th[e] statute. . . . There is no additional requirement that accommodations be available for one-time rental by the public [as in the case] of a hotel or motel."

The tax, of course, is imposed on the sale to the purchaser, and we agree with the department that the issue is not whether members of the general public can have access to time-share units purchased and owned by someone else, but whether the units were available to the public at the time they were being sold. Telemark has not persuaded us that the commission's decision in this respect is unreasonable.

Telemark next argues that the commission unreasonably concluded that the flexible time-shares were not fixed as to unit or starting time at the time of sale. It refers to an affidavit indicating that all deeds to the time-share properties—including, apparently, the flexible time-shares—state a specific unit and a specific week. The fact remains, however, that the deeds and contracts are expressly conditioned on all provisions of the "Condominium Documents," including the bylaws and articles of incorporation of the association which, as indicated above, plainly state that a purchaser of

flexible time-shares has no rights to a particular unit or a specific occupancy week except by advance application for each intended visit. The commission could reasonably conclude, on these facts, that these sales were not fixed as to either unit or starting time within the meaning of § 77.52(2)(a)1, STATS.

Finally, Telemark argues at length that the time-shares are interests in real estate which cannot be made subject to a sales tax. It refers to § 707.03(2), STATS., part of the Time-Share Ownership Act, *see* 1987 Wis. Act 399, § 457m, which states, "Each time-share estate constitutes for all purposes a separate estate in real property," and it argues that had the legislature intended § 77.52(2)(a)1, STATS., to change time-shares into something else for purposes of sales taxation, it should have amended § 707.03. We agree with the department that the appropriate response to that argument is that the legislature expressly included "the furnishing of rooms or lodging through the sale of a time-share property as defined in s. 707.02(32)" in the sales-tax statute; to hold otherwise would write this language out of the statute. Section 77.52(2)(a)1. Again, it was reasonable for the commission to conclude that the legislature meant what it said and intended to make such transactions subject to sales tax despite the fact that, for other purposes, and in other chapters of the statutes, time-share interests may take on aspects of real property. "[T]here is a presumption that the legislature intends to change the law," where, as it did here when it added the time-share language to § 77.52(2)(a)1, "it amends a statute." *Lang v. Lang*, 161 Wis. 2d 210, 220, 467 N.W.2d 772, 776 (1991) (citations omitted).

We are satisfied that the commission could reasonably conclude that Telemark's sales of flexible time-shares were subject to taxation under § 77.52(2)(a)1, STATS. We are equally satisfied that, while Telemark's competing interpretation of the statute is not unreasonable, it is not more reasonable than the commission's. It follows that, under *Barron* and similar cases, the commission's decision must stand.

## III. Telemark's Constitutional Claims

A party challenging the constitutionality of a statute bears a heavy burden, for it is well settled that unconstitutionality must be established beyond a reasonable doubt and that "every presumption must be indulged" in favor of upholding the statute. *Szarzynski v. YMCA, Camp Minikani*, 184 Wis. 2d 875, 887, 517 N.W.2d 135, 139 (1994) (internal quotation marks and quoted sources omitted). We must preserve the statute "if it is at all possible to do so." *State ex rel. Fort Howard Paper Co. v. Lake Dist. Bd.*, 82 Wis. 2d 491, 505, 263 N.W.2d 178, 185 (1978). If there is "any reasonable basis upon which the legislation may constitutionally rest, [we] must assume that the legislature had such fact in mind and passed the act pursuant thereto." *Treiber v. Knoll*, 135 Wis. 2d 58, 65, 398 N.W.2d 756, 758 (1987) (internal quotation marks and quoted sources omitted).

Telemark argues that § 77.52(2)(a)1, STATS., as applied to its sales of flexible time-shares, violates the "uniformity clause," WIS. CONST. art. VIII, § 1, which states, "The rule of taxation shall be uniform . . . ." The clause, however, is limited to property taxes—recurring *ad valorem* taxes on property—as

opposed to transactional taxes such as those imposed on income or sales. *State ex rel. Atwood v. Johnson*, 170 Wis. 218, 242, 175 N.W. 589, 599 (1919); *see also Van Dyke v. Tax Comm'n*, 217 Wis. 528, 548, 259 N.W. 700, 709 (1935). In contrast, the tax at issue here is imposed on the sale of time-shares: it is a tax "imposed on the transactions, and the privilege to conduct [them], not [on] the property." *Cedar Valley Leasing, Inc. v. Iowa Dep't of Rev.*, 274 N.W.2d 357, 361 (Iowa 1979). Telemark has not satisfied us beyond a reasonable doubt that taxing the sale of its flexible time-shares violates the uniformity clause.

■

Telemark's equal protection challenge to § 77.52(2)(a)1, STATS., must overcome an even stronger presumption of constitutionality.

> [W]here a tax measure is involved, the presumption of constitutionality is strongest. The courts have given recognition to the essentiality of taxation in preserving an ordered society, and there is implicit recognition in judicial decisions that the principle of absolute equality and complete congruity of the treatment of classifications is impossible and must be sacrificed in the interests of preserving the governmental function.

*Simanco, Inc. v. DOR*, 57 Wis. 2d 47, 54, 203 N.W.2d 648, 651–52 (1973).

■

The equal protection clause is generally designed to ensure that persons who are similarly situated will be treated similarly. *State v. Trepanier*, 204 Wis. 2d 505, 509, 555 N.W.2d 394, 397 (Ct. App. 1996). When, as here, the classification is not inherently suspect, such as those based on factors like race, religion or

alienage,[5] it need bear only "a rational relationship to a legitimate governmental interest" in order to survive an equal protection challenge. *Id.* at 509–10, 555 N.W.2d at 397. And, because states have "large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation," state tax laws will not be held unconstitutional even if they do discriminate against or in favor of a particular class, as long as "the discrimination is founded upon a reasonable distinction or [a] difference in state policy." *State ex rel. La Follette v. Torphy*, 85 Wis. 2d 94, 100, 270 N.W.2d 187, 189 (1978) (internal quotation marks and quoted source omitted). Indeed, the United States Supreme Court has said: "The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. *The test is whether the difference in treatment is an invidious discrimination." Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359 (1973) (emphasis added).

Telemark argues that § 77.52(2)(a)1, STATS., fails these tests because, first, the statute treats purchasers of flexible time-shares like hotel or motel guests, rather than purchasers of real estate interests, as the guaranteed time-share purchasers are treated and, second, the tax paid is not necessarily related to the "value of the actual term of each stay" at a condominium unit. According to Telemark, if a purchaser elects not to use a condominium unit for several years, he or she "has already paid sales tax for short-term occupancy which never takes place." Furthermore, it says, the discriminatory effect of the tax is compounded because subsequent sales of the owner's interest would also be

---

[5] *See City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976).

subject to taxation. Finally, Telemark maintains that the unreasonableness of the classification is particularly evident when the flexible time-share purchaser is compared with a hotel or motel guest because a person spending one week a year for fifty years at the time-share property would pay "a much lower sales tax on short-term occupancy than a person who rents a hotel/motel-type accommodation for one week each year for fifty years."

We agree with the department that the argument misses the mark. The tax is not imposed on each "stay" reserved by the flexible time-share owners; it is a tax on the "up-front" purchase. This tax is similar to the sales tax paid on the purchase of an automobile, which is paid whether or not the purchaser ever actually uses the car and is paid again, on trade-ins at least, when the dealer resells the car.

Telemark has not established beyond a reasonable doubt that the legislature's decision to tax the sale of flexible time-shares, while not taxing the sale of guaranteed time-shares, results in the type of invidious discrimination the equal protection clause is designed to protect against. As the supreme court said in *La Follette*, "Although the legislature may not have chosen the best and fairest way to deal with . . . [the question], it cannot be said that the statutory classification[ ] . . . [is] arbitrary and without rational basis." *La Follette*, 85 Wis. 2d at 103, 270 N.W.2d at 190.

*By the Court.*—Order affirmed.