Eugene HAFNER, Lorraine Hafner, and Gabriel DeRango, Plaintiffs-Appellants,†

v.

WISCONSIN DEPARTMENT OF REVENUE, Defendant-Respondent.

Court of Appeals

*No. 00–0511. Submitted on briefs September 12, 2000.—Decided September 28, 2000.*

**2000 WI App 216**

(Also reported in 619 N.W.2d 300.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Eugene O. Duffy* and *Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.*, of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *F. Thomas Creeron III*, assistant attorney general.

Before Eich, Vergeront and Deininger, JJ.

¶ 1. EICH, J. Eugene and Lorraine Hafner and Gabriel DeRango appeal from a judgment affirming a decision of the Wisconsin Tax Appeals Commission. The commission affirmed a determination by the Department of Revenue that the appellants were not entitled to a refund of Wisconsin income taxes levied on their federal civil service (CSRS) pensions between 1990 and 1993.

¶ 2. WISCONSIN STAT. § 71.05(1)(a) (1997–98)[1] exempts from state taxation "all payments received from the U.S. civil service retirement system . . . which are paid on the account of any person who was a member of the paying or predecessor system or fund as of December 31, 1963." Appellants were federal employees (and members of the CSRS) who had left federal service before the cutoff date, and were reemployed sometime thereafter. Upon reemployment, they exercised the option, granted them under federal law, to reinstate their retirement benefit credits and pension eligibility by paying back the amounts they had withdrawn from the fund. They argue that, as a matter of federal and state law, they should be treated as if their federal service had been continuous, rendering them "member[s]" of the CSRS on the crucial date. We disagree, and affirm the judgment.

## I. Scope of Review

¶ 3. On appeal, we review the commission's decision, not the circuit court's. *See Stafford Trucking v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981). Appellants argue that our review should be de

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

novo, paying no deference to the commission's decision, because the case was heard and decided by a single member of the commission, who, they claim, expressed doubts about proceeding on his own. We disagree. We think the law requires us to accord "due weight" to the decision.

¶ 4. Under various subsections of WIS. STAT. § 73.01(4), matters coming before the commission may be heard by a single commissioner, and appellants stipulated that that procedure should be followed in this case when the other members of the commission recused themselves. Under the statutory scheme, the commission acts in an institutional sense whether a particular case is heard by one, two, or three commissioners; and a decision by a single commissioner, with unquestioned statutory authority to hear and decide the case, is no less a decision of the commission—and no less entitled to the degree of judicial deference that otherwise would be applicable—than one issued by a full complement of commissioners.

¶ 5. Appellants also argue that we should not defer to the commission's decision to any degree because, in their words, the commissioner hearing the case acknowledged "that he was greatly disadvantaged . . . because he was unable to draw upon the input of the other members of the Commission," and also that, because of his "relatively short" tenure on the commission, "his individual experience was limited." Again, we are not persuaded. The argument is based on the deciding commissioner's innocuous comment that he "missed" having his colleagues participate in the hearing—a comment plainly immaterial to any of the issues before us.

¶ 6. WISCONSIN STAT. § 227.57(10) requires us to give "due weight . . . [to] the experience, technical competence, and specialized knowledge of the [deciding] agency . . ., as well as the discretionary authority conferred upon it." And the cases hold that where, as here, the agency is charged by the legislature with the application or enforcement of the statute in question, and has had at least some experience with the issue, "due weight" means that the agency's decision will not be overturned if it is "reasonable" and "comports with the purpose of the statute"—unless there is a more reasonable interpretation available. *UFE, Inc. v. LIRC,* 201 Wis. 2d 274, 286–87, 548 N.W.2d 57 (1996).

## II.  Discussion

¶ 7.  Under the "intergovernmental tax immunity" rule derived from 4 U.S.C. § 111,[2] and the supremacy clause of the U. S. Constitution (Art. VI, cl. 2), a state tax system may not discriminate against the federal government. *See McCulloch v. Maryland,* 17 U.S. 316 (1819). And the Supreme Court held in *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 805 (1989), that the rule is violated by state income tax laws that accord preferential treatment to state and local governmental employees with respect to taxation of their retirement benefits.

¶ 8.  At the time of the *Davis* decision, a Wisconsin statute existed which exempted from income

---

[2] 4 U.S.C. § 111 provides in relevant part as follows:

The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States . . . by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

taxation all pension income received by retired state employees who were members of the Wisconsin Retirement System as of December 31, 1963. Federal retirees, however, did not enjoy a similar exemption. The legislature, complying with *Davis*, enacted WIS. STAT. § 71.05(1)(a), which took effect on August 9, 1989, and which, as indicated above, extended the exemption to federal pensioners who were members of the CSRS on December 31, 1963. The question is whether these appellants meet that requirement.

¶ 9.   Federal pensions, like most others, are based in large part on "credits"—the monthly deposit of a portion of the employee's earnings into a retirement account administered by the CSRS, and the employee's eventual pension is calculated pursuant to a formula based on a combination of those credits and his or her years of service. A covered employee leaving federal service prior to retirement has two options with respect to his or her accumulated contributions: they can be left in the fund or they can be withdrawn in a lump sum. Under 5 U.S.C. § 8342, however, an employee electing a lump-sum payment "voids all annuity rights . . . based on the service on which the lump-sum credit is based, until the employee . . . is reemployed in the service subject to this subchapter." Should the employee, having received the lump-sum payment, later be reemployed by the federal government, he or she may "buy back" the earlier years-of-service credit—for purposes of computing the final retirement annuity—by repaying all amounts received, plus interest, to the CSRS fund.

¶ 10.   Appellants, each of whom complied with the "buy-back" provisions upon reentering federal employment after December 31, 1963, claimed entitlement to the WIS. STAT. § 71.05(1)(a) exemption—the

Hafners by means of a refund claim, and DeRango by challenging the Department of Revenue's assessment of additional taxes on his pension income. The department ruled against them and the Tax Appeals Commission agreed, concluding that the statute did not apply to federal pensioners who had left government service prior to the December 31 cutoff date, and were later reemployed—even if they had redeposited all payments received upon separation. As indicated, the circuit court, on review, affirmed the commission's decision. The issue before us, then, is whether the commission's interpretation of § 71.05(1)(a) is reasonable (and, if it is, whether a competing interpretation is more reasonable).

¶ 11. We begin by noting that WIS. STAT. § 71.05(1)(a) is a tax exemption statute. As such, it must be strictly construed against the appellants, *see Wisconsin Dep't of Revenue v. Parks-Pioneer Corp.*, 170 Wis. 2d 44, 47–48, 487 N.W.2d 63 (Ct. App. 1992); and they bear the burden of establishing their entitlement to the exemption. *See Pabst Brewing Co. v. City of Milwaukee*, 125 Wis. 2d 437, 445, 373 N.W.2d 680 (Ct. App. 1985).

¶ 12. The commission concluded that the statutory language was unambiguous—that when it talks about "membership" in the CSRS on the stated date, it means "membership as a historical fact, not membership that is constructive or purchased at a later date." According to the commission, the fact that employees whose service is interrupted can "repurchase" prior years of employment for benefit determination purposes does not erase their absence from federal employment on December 31, 1963, or otherwise "retroactively employ[ ]" them so that they may be

considered to have been actually employed on that date.

¶ 13.    We consider this interpretation of the statute to be reasonable—both on its face and in light of prior decisions of the commission. There is no disparity in the treatment of similarly situated federal and state retirees; neither may retroactively establish their membership in a qualifying fund through the purchase of forfeited service that occurred prior to December 31, 1963.[3] We also consider it significant that, under federal law, federal employees who elect to leave their positions have the option to either allow their contributions to remain in the fund, or to withdraw them in a lump sum—and, as we have indicated, an employee's election to withdraw his or her funds "voids all annuity rights . . . ." We agree with the commission that this provision means what it says—that such an employee no longer has any vested rights in the system at that point. And while he or she may recapture the lost credits for the earlier years of employment by paying back the withdrawal, the statute may be reasonably interpreted as not going so far as to render them "members"

---

[3] The commission has interpreted WIS. STAT. § 71.05(1)(a) as requiring rejection of a similar interrupted-service argument by a state retiree. In *Connor v. Wisconsin Dep't of Revenue*, Wis. Tax Rptr. ¶ 400–176 (1995), a case discussed in the briefs of both parties, the employee, a member of the State Teachers Retirement System who had withdrawn his deposited accumulations when he left his job a few months prior to December 31, 1963, returned to teaching several years later and "re-purchased" his earlier years of service in anticipation of retiring. The commission held that, while the buy-back did entitle him to credit for those years of service in calculating the amount of his pension, he was, as a matter of law, not a member of the system on the cutoff date.

of the system on a specific date when they concededly were not employed by the government. There is, we believe, a patent distinction between being a "member" of a retirement plan on a specific date, and later being given credit for employment prior to that date for the purpose of calculating the eventual pension benefit. It would have been a simple matter for the legislature to so state, had it intended the result sought by appellants in this case. Indeed, in the absence of any such language, we consider the commission's interpretation to be not only the most reasonable, but quite possibly the *only* reasonable interpretation of WIS. STAT. § 71.05(1)(a).

¶ 14. Appellants disagree. They claim that the Wisconsin Supreme Court has ruled that, at least for years 1989 and after, they are entitled to the relief they seek. Some background is in order. In 1989, the year the United States Supreme Court ruled, in *Davis v. Michigan Dep't of Treasury, supra,* that state income tax laws were unconstitutional insofar as they differentiated between state and federal retirees, a group of federal retirees—including the appellants in this action—commenced a class action in Dane County challenging the state's attempts to tax their federal pension benefits. This was at a time prior to the enactment of WIS. STAT. § 71.05(1)(a)—when the Wisconsin pension exemption applied only to state pensioners. The class, as certified by the circuit court, was said to comprise "[a]ll present and former Wisconsin residents who paid income taxes to the State of Wisconsin on the retirement benefits paid to them by the United States government who were members of their retirements systems as of December 31, 1963." *See Hogan v. Musolf,* 157 Wis. 2d 362, 379, 471 N.W.2d 865 (1990).

¶ 15. The circuit court issued a temporary injunction prohibiting DOR from collecting the challenged taxes pending a decision on the merits of the plaintiffs' claims. We granted the department's motion for leave to appeal and, with one immaterial exception, affirmed the circuit court's order. *See Hogan,* 157 Wis. 2d at 381. While the case was pending in this court, the legislature created WIS. STAT. § 71.05(1)(a), which, as we have discussed above, exempted federal retirees' pensions from income taxation. The supreme court accepted the department's petition for review and reversed our decision, holding that the plaintiffs' action could not proceed because they had failed to exhaust state administrative remedies. *See Hogan v. Musolf,* 163 Wis. 2d 1, 26, 471 N.W.2d 216 (1990) (*Hogan II*). At one point in its opinion, the court, discussing the procedural posture of the case, stated:

> The court of appeals granted the Department's petition for leave to appeal the circuit court's order on August 1, 1989. On August 9, 1989, 1989 Wisconsin Act 31, section 1817m, [WIS. STAT. § 71.05(1)(a)] went into effect *exempting for 1989 and subsequent tax years the pension income of the federal retirees in the certified class.*

*Id.* at 9–10 (emphasis added).

¶ 16. Appellants argue that because they were members of the certified class in *Hogan,* the court's comment constitutes a specific holding that WIS. STAT. § 71.05(1)(a) applies to them—at least for 1989 and subsequent years. And they claim the commission erred when it rejected their *Hogan II* argument as based on a nonprecedential *dictum* which it was not bound to follow.

¶ 17. We are satisfied that the commission's rejection of appellant's argument was both reasonable and proper. Not only did the commission correctly observe that the argued passage appeared only in the court's statement of the case and was "not part of the court's holding," but it went on to note that the court's own statement of the issue in the case makes it clear that the quoted comment was "dicta, not central or integral to [the court's] holding." The court stated:

> *This case does not involve the question of whether these retirees are entitled to a tax refund.* Nor does it involve the question of the amount of such refund. *It involves only the question of what route these retirees must take in pursuing their claim for a refund.* The primary issue presented is whether these retirees must exhaust their state administrative remedies before filing a sec. 1983 action in state courts.

*Hogan*, 163 Wis. 2d at 5 (emphasis added).

¶ 18. "A dictum is a statement not addressed to the question before the court or necessary for its decision." *American Family Mut. Ins. Co. v. Shannon*, 120 Wis. 2d 560, 565, 356 N.W.2d 175 (1984). It is true, as we have often recognized, that when an appellate court "intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981). But that does not mean that every statement made by the court constitutes binding precedent. The *Hogan II* court's statement was *dicta*,

228

pure and simple, and the commission could reasonably—and quite properly—ignore it.

*By the Court.*—Judgment affirmed.