ALL CITY COMMUNICATION COMPANY, INC. and Waukesha Tower Associates, Petitioners-Appellants,

v.

STATE of Wisconsin DEPARTMENT OF REVENUE, Respondent-Respondent.

Court of Appeals

*No. 02–1201. Submitted on briefs October 11, 2002.—Decided March 27, 2003.*

2003 WI App 77

(Also reported in 661 N.W.2d 845.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *John R. Austin* and *Margaret M. Derus* of *Reinhart Boerner Van Deuren, S.C.*, Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *F. Thomas Creeron III*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Lundsten, JJ.

¶ 1. LUNDSTEN, J. The dispute in this case arises from an assessment by the Department of Revenue (DOR) of sales and use taxes against All City Communication Company, Inc. and Waukesha Tower Associates (collectively referred to as the Companies). The subject of the tax is a communications tower owned by Waukesha Tower and located on land leased by Waukesha Tower. All City rents space on the tower. The Companies petitioned the Wisconsin Tax Appeals Commission for a redetermination of the assessment of sales and use taxes. The commission concluded that DOR correctly imposed sales and use taxes. The Companies petitioned the circuit court for judicial review. The circuit court affirmed the commission. We likewise affirm the commission.

### *Background*

¶ 2. In December 1985, Waukesha Tower leased rural land on which to erect a communications tower. The lease provides that Waukesha Tower may "occupy and use the [land] only for the operation of a 500 foot broadcast radio tower." The lease term was for ten years and provided that all "[i]mprovements hereafter erected or located on the" leased land "shall . . . remain the property of [Waukesha Tower]." The lease also stated that "[Waukesha Tower] shall have the right to remove any of the Improvements from the [leased land] at the end of the [lease] term." The lease permits the surrounding land to continue to be used as farmland.

¶ 3. Waukesha Tower constructed a communications tower on the site. The tower is built of steel, stands 480 feet tall, sits on a concrete foundation, and is secured by thirty guy wires which are also anchored in concrete.[1] All City began renting space for its communications equipment on the tower in 1992.[2]

---

[1] Waukesha Tower also constructed an adjacent equipment building on the site. However, the Companies' brief on appeal and evidence at the tax appeals hearing focus on the attributes of the tower. The Companies provide detailed information on whether the tower might be disassembled and moved. We do not have similarly detailed argument or record cites for the equipment building, and the Companies do not separately argue that the building, independent of the tower, is real property. In this decision, we omit separate mention of the equipment building and assume, as do the parties, that its status for tax purposes is tied to that of the tower.

[2] All City also rents space on similar towers across Wisconsin that are owned by companies other than Waukesha Tower. Eleven of these other towers are located on leased land. All City paid rental fees to Waukesha Tower and the other companies owning towers on leased land. DOR imposed sales and use tax

¶ 4. DOR considered the communications tower to be personal property and thus subject to sales and use taxes. DOR issued a sales and use tax assessment against Waukesha Tower for the tax years 1986 through 1995. Waukesha Tower petitioned for redetermination, and DOR reaffirmed its decision. DOR also issued a sales and use tax assessment against All City for the tax years 1992 through 1995 for its use of the tower. All City petitioned for redetermination, and DOR likewise reaffirmed its decision. All City and Waukesha Tower petitioned for review with the tax appeals commission (the commission).

¶ 5. The cases were combined in proceedings before the commission. After an evidentiary hearing, the commission found that the tower was specifically designed for the leased land; that the tower could be disassembled and either sold for scrap or reassembled at another site; and that a market exists for the sale and purchase of used towers.[3] The commission affirmed the disputed assessments. The circuit court affirmed the commission.

on these rental fees. The commission's decision resolved All City's challenge to DOR's imposition of sales and use tax. On appeal, All City has waived its challenge to the imposition of sales and use tax on properties other than the tower owned by Waukesha Tower by failing in its appellate brief to challenge the commission's decision as it relates to these other properties. *See Tatur v. Solsrud*, 167 Wis. 2d 266, 269, 481 N.W.2d 657 (Ct. App. 1992) (issue not raised on appeal is deemed abandoned), *aff'd*, 174 Wis. 2d 735, 498 N.W.2d 232 (1993).

[3] Although the Companies' brief could be read as suggesting that these last two findings are disputed facts because the Companies allege that the tower could not be moved to another location, we will treat these findings as undisputed. The Companies have failed to argue that any of the commission's findings are unsupported by substantial evidence. *See Schlieper v. DNR,*

### *Discussion*

¶ 6. The Companies contend that the communications tower is a real property improvement, rather than personal property, and thus not subject to sales or use taxes. All retailers must pay sales tax on "the gross receipts from the sale, lease or rental of tangible personal property, including accessories, components, attachments, parts, supplies and materials, sold, leased or rented at retail in this state." WIS. STAT. § 77.52(1) (1993–94).[4] "Tangible personal property" is defined as "all tangible personal property of every kind and description." WIS. STAT. § 77.51(20).[5] In addition, a use tax is owed on "the use or consumption in this state of taxable services under s. 77.52 purchased from any retailer." WIS. STAT. § 77.53(1).

> "Use" includes the exercise of any right or power over tangible personal property or taxable services incident to the ownership, possession or enjoyment of the property or services, or the results produced by the services, including installation or affixation to real property and including the possession of, or the exercise of any right or power over tangible personal property by a lessee under a lease . . . .

WIS. STAT. § 77.51(22)(a). Therefore, if the tower is

188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (failure to dispute grounds relied upon by agency waives any challenge to those grounds).

[4] All references to the Wisconsin Statutes are to the 1993–94 version unless otherwise noted. The relevant statutes were unchanged during the period in which DOR assessed taxes against the parties.

[5] The parties do not suggest that the statute's use of the word "tangible" has any bearing on the appropriate test to use. Consequently, for purposes of this decision, we shall treat "tangible personal property" the same as "personal property."

deemed "personal property," then Waukesha Tower is liable for sales tax on proceeds from renting or leasing space on the tower, and All City is liable for use tax on its rental of space on the tower.[6]

## Standard of Review

■

¶ 7. The Companies bear the burden of demonstrating that DOR's tax assessment is in error. *Woller v. Department of Taxation*, 35 Wis. 2d 227, 232, 151 N.W.2d 170 (1967).

■

¶ 8. We rely on fact finding by an agency unless such findings are "not supported by substantial evidence in the record." WIS. STAT. § 227.57(6) (2001–02). As explained above, the Companies do not argue that any fact finding by the commission is unsupported by the record. Thus, we address undisputed facts.

---

[6] For reasons that are not apparent from either the commission's decision, the parties' briefs, or the record, the following administrative code section is not at issue. WISCONSIN ADMIN. CODE § Tax 11.63(5) provides, in part:

> BROADCASTING TOWERS. Commercial broadcasting towers consti-·tuting the transmission antenna system of a radio or television station are deemed, for sales and use tax purposes, either real estate improvements if installed on land owned by the station or tangible personal property if installed on land owned by others.

Although the provision is mentioned in DOR's brief, the commission's decision does not mention this code provision and DOR does not ask this court to rely on it. The Companies do not discuss the provision at all. Consequently, we express no opinion on the application this administrative code section has to the facts before us.

¶ 9. The application of a statute to undisputed facts is a question of law. *Wisconsin Dep't of Transp. v. Office of Comm'r of Transp.*, 135 Wis. 2d 195, 198, 400 N.W.2d 15 (Ct. App. 1986). The parties dispute the level of deference we should grant to the commission's legal determination in this case. "In reviewing agency interpretations, this court has applied three distinct levels of deference: great weight, due weight, and de novo review." *MCI Telecomms. Corp. v. State*, 209 Wis. 2d 310, 317, 562 N.W.2d 594 (1997).

> Great weight deference is appropriate once a court has concluded that: (1) the agency was charged by the legislature with the duty of administering the statute; (2) that the interpretation of the agency is one of long-standing; (3) that the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) that the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98 (1995).

> Due weight deference is appropriate when the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court. The deference allowed an administrative agency under due weight is not so much based upon its knowledge or skill as it is on the fact that the legislature has charged the agency with the enforcement of the statute in question.

*UFE Inc. v. LIRC*, 201 Wis. 2d 274, 286, 548 N.W.2d 57 (1996). *De novo* review is appropriate if "the case is clearly one of first impression for the agency and the agency lacks special expertise or experience in deter-

mining the question presented." *Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 245, 493 N.W.2d 68 (1992).

¶ 10. The Companies argue that the commission should not be granted any deference, and particularly that the commission's decision is not entitled to great weight deference. The Companies argue that the standard of review should be *de novo* because (1) this is a case of first impression, given that the commission has not previously considered whether sales tax should apply to property adapted to and attached to leased land, (2) the statute at issue here is unambiguous, and (3) resolution of this case does not require the commission's special expertise.

¶ 11. We conclude that the commission should be accorded at least due weight deference. As the Companies concede, the legislature has charged the commission with administering the tax statutes at issue here. The commission has experience determining whether property is personal property for purposes of imposing sales and use taxes.[7] Although the Companies correctly assert that the commission has not previously decided a case under these particular facts, we may still defer to the commission. "The correct test under Wisconsin law is whether [the agency] has experience in interpreting a particular statutory scheme, not whether it has ruled

---

[7] *See, e.g., Zignego Co. v. Wisconsin Dep't of Revenue,* 211 Wis. 2d 819, 828–29, 565 N.W.2d 590 (Ct. App. 1997) (commission determined whether contractor's purchase of materials was for the construction of real property and thus subject to sales tax); *Salmon v. Wisconsin Dep't of Revenue,* Docket No. S-9178, WIS. TAX REPS. (CCH) ¶ 202–621 (Nov. 29, 1985; corrected Dec. 12, 1985) (determining whether lamp and lighting system retained their character as personal property and thus lamp cleaning service was subject to sales tax).

on precise, or even substantially similar, facts before."
*Town of Russell Volunteer Fire Dep't v. LIRC*, 223 Wis.
2d 723, 733, 589 N.W.2d 445 (Ct. App. 1998). In addi-
tion, contrary to the Companies' assertion, the statute
at issue here is ambiguous because reasonable minds
could differ as to whether the tower is "personal prop-
erty." *See State v. Williquette*, 129 Wis. 2d 239, 248, 385
N.W.2d 145 (1986) (holding that statute is ambiguous if
reasonable persons could disagree as to its meaning).

¶ 12. Under "due weight" deference, "a court will
not overturn a reasonable agency decision that com-
ports with the purpose of the statute unless the court
determines that there is a more reasonable interpreta-
tion available." *UFE Inc.*, 201 Wis. 2d at 286–87. Be-
cause we conclude that the commission's decision that
the tower is "personal property" meets this standard, we
need not decide whether that decision is entitled to
great weight deference, as DOR contends. *See Century-
Tel of Midwest-Kendall, Inc. v. Public Serv. Comm'n*,
2002 WI App 236, ¶ 18, 257 Wis. 2d 837, 653 N.W.2d
130.

*Applicable Test*

¶ 13. The statutes dictate that sales tax and use
tax are owed on the purchase and use, respectively, of
"tangible personal property." The statutes state that
"tangible personal property" is "all tangible personal
property of every kind and description." Wis. Stat.
§ 77.51(20). Wisconsin has employed a longstanding
test to determine whether property was "personal prop-
erty" or "real estate." *See Taylor v. Collins*, 51 Wis. 123,
127, 8 N.W. 22 (1881). The common law test provides:

" [w]hether articles of personal property are fixtures, *i.e.*, real estate, is determined in this state, if not generally, by the following rules or tests: (1) Actual physical annexation to the real estate; (2) application or adaptation to the use or purpose to which the realty is devoted; and (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold. "

*Wisconsin Dep't of Revenue v. A.O. Smith Harvestore Prods., Inc.*, 72 Wis. 2d 60, 67–68, 240 N.W.2d 357 (1976) (quoting *Premonstratensian Fathers v. Badger Mut. Ins. Co.*, 46 Wis. 2d 362, 367, 175 N.W.2d 237 (1970)).

¶ 14. The Companies agree that this is the correct test, but argue that the commission did not apply this test in its decision. We conclude the commission did apply the *Harvestore* test. The commission stated the test and applied what has become the most important factor of the test:the intent factor. *See Harvestore*, 72 Wis. 2d at 68 (the intent factor "is regarded as the most important of the three factors"). The commission determined that the requisite intent to make the tower a permanent accession to the land was lacking.

¶ 15. We conclude that the commission's application of the *Harvestore* test, to determine whether property is "personal property" or real estate, was reasonable. The commission followed cases which had applied the test to taxation disputes, including *Pulsfus Poultry Farms, Inc. v. Town of Leeds*, 149 Wis. 2d 797, 812–14, 440 N.W.2d 329 (1989) (applying test to dispute over property tax), and *Harvestore*, 72 Wis. 2d at 66–68 (applying test to dispute over sales tax). We shall apply the *Harvestore* test to determine if the commission's conclusion was as reasonable as the Companies' oppos-

ing conclusion. *See UFE Inc.*, 201 Wis. 2d at 286–87 ("[A] court will not overturn a reasonable agency decision that comports with the purpose of the statute unless the court determines that there is a more reasonable interpretation available.").

*Applying the Harvestore Factors to this Case*

¶ 16. When applying the *Harvestore* factors, we look to case law for guidance. We will not, however, rely on all the decisions cited by the parties. While many decisions distinguish real estate from personal property, they do so in various contexts. Borrowing language from one context and applying it to another poses a danger.

> Questions of what fixtures pass as real estate arise principally in the following situations: [1] between vendor and vendee; [2] mortgagor and mortgagee; [3] landlord and tenant; [4] owner of life estate and remainderman; [5] seller under a conditional sales contract as against mortgagee and subsequent vendees and prior mortgagees; [6] with reference to taxation. Generally speaking the rule is very liberal with respect to the rights of mortgagees and vendees. A much stricter rule is applied as against a landlord in a contest between landlord and tenant. It is probable that no branch of the law is in greater confusion than the law of fixtures. Confusion is due in some degree at least to a failure to classify the cases. There is a constant tendency to carry over decisions in one classification and to apply them to cases in other classifications, ignoring the difference in the legal relation of the parties.

*Thomsen v. Cullen*, 196 Wis. 581, 598–99, 219 N.W. 439 (1928). Thus, to preserve the classifications under which these cases arise, we shall apply the *Harvestore*

factors, but relying only on those cases that apply the *Harvestore* test to taxation disputes: specifically, *Pulsfus Poultry Farms*, 149 Wis. 2d 797, and *Harvestore*, 72 Wis. 2d 60.

### 1. The Annexation Factor

■

¶ 17. The annexation factor asks whether the property has been "[a]ctual[ly] physical[ly] annex[ed] to the real estate." *Harvestore*, 72 Wis. 2d at 67 (citation omitted). We note that "annexation" in this context simply means attachment. Nonetheless, we will adhere to the use of the more archaic term because it is consistently used in this area of law.

¶ 18. Case law suggests two approaches to analyzing whether property is annexed to the real estate. One approach is that the annexation factor is merely a trigger—that is, property will not be considered real property unless it is annexed to the realty. This approach does not consider how substantial the annexation is. *See, e.g., Pulsfus Poultry Farms*, 149 Wis. 2d at 812–13 (commenting that disputed property is annexed, but not discussing the extent to which it is annexed).

¶ 19. The other approach considers not only whether the property is annexed, but also the extent to which the property is annexed. *See, e.g., Harvestore*, 72 Wis. 2d at 68 (considering "that the unit is so firmly attached to the ground that it can and has withstood the force of a tornado"). Neither of the tax cases squarely addresses this question, and each treats it differently. However, *Pulsfus Poultry Farms*, the most

recent supreme court decision, takes the first approach, and we shall likewise consider this first factor as a trigger.[8]

¶ 20. There is no dispute in this case that the tower is annexed to the real property, and so we turn our attention to the second factor.

## 2. *The Adaptation Factor*

¶ 21. The second factor in the test considers the degree of "application or adaptation to the use or purpose to which the realty is devoted." *Harvestore*, 72 Wis. 2d at 67 (citation omitted). Cases suggest the test may be viewed two ways. Under the first approach, a court determines the degree to which the realty is well suited to the use or purpose of the property in question. *See, e.g., id.* at 68. Under this first view, we have difficulty discerning the logic behind the test and how it would further the goal of distinguishing real property from personal property. Under the second approach, a court determines the degree to which the property in question has been adapted to the realty in such a way that it loses its marketability and demonstrates an intent to make the property permanent. *See, e.g., Pulsfus Poultry Farms*, 149 Wis. 2d at 813 (considering both whether the disputed property was adapted to the realty and whether it was adapted to the use to which the realty is devoted).

---

[8] The cases that consider the extent of the annexation do so with a view to whether it suggests that a reasonable person would think the annexation suggests permanence. This, of course, is the question asked by the third *Harvestore* factor: intent. Thus, in our view, the better approach is to treat the first factor as a trigger. If the property is annexed to real estate, then the analysis proceeds.

¶ 22. *Pulsfus Poultry Farms* addresses this factor under both approaches. The parties here address this factor under the first approach. If we were to analyze the adaptation factor under the first approach, we would conclude both that the land is well suited for farming and, at the same time, it is equally well suited for use as a base for a broadcasting tower. Apart from the required engineering necessary to erect all broadcasting towers, the Companies do not allege that this tower has been adapted in some way unique to this particular plot of land. Ultimately, we conclude that regardless how we interpret the adaptation factor, it will not alter the outcome in this case because, under either view, both parties seem to have compelling arguments. Because neither side presents a stronger argument on this factor, factor three (intent) will overshadow any determination regarding factor two. Thus, we leave factor two unresolved and proceed to factor three.

### 3. The Intent Factor

¶ 23. The third factor considers whether there is an intent "to make a permanent accession to the freehold." *Harvestore*, 72 Wis. 2d at 67–68 (citation omitted). As stated above, the intent factor "is regarded as the most important of the three factors." *Id.* at 68. Cases distinguishing between personal property and real estate for purposes of taxation have viewed intent as:

> "not the actual subjective intent of the landowner making the annexation, but an objective and presumed intention of that hypothetical ordinary reasonable person, to be ascertained in the light of the nature of the article, the degree of annexation, and the appropriateness of the article to the use to which the realty is put."

*Id.* at 69 (quoting BROWN, PERSONAL PROPERTY § 141, at 726 (2d ed. 1955)); *see also Pulsfus Poultry Farms*, 149 Wis. 2d at 813 (applying the hypothetical reasonable-person standard).

¶ 24. The Companies argue that, viewed objectively, the erection of a 480–foot-tall tower evinces an intent to permanently annex the property to the land. In addition, the Companies argue that the tower is permanently annexed to the land due to the substantial concrete foundations required to attach it to the land. DOR responds that the commission found that the tower is movable. Thus, according to DOR, the fact that the tower was erected on leased land is more important than the degree to which the tower is annexed to the land.

¶ 25. There is no dispute that the substantial foundations associated with a 480–foot tower mean moving the properties could not be done with ease. However, the commission determined that a market existed for the sale and purchase of used towers, and that the tower could be disassembled and reassembled at another site. Waukesha Tower had the right to remove the tower from the land, and the landowner had the right to terminate the lease at the end of the lease term. Despite the tower's large size, nothing in the *Harvestore* test suggests that size alone can manifest intent to create a permanent accession to the land. In view of the undisputed facts, we conclude that a reasonable person would not have intended the tower to be a permanent accession to the land.

¶ 26. We further conclude that the commission's determination that the tower is personal property was reasonable, and that no more reasonable conclusion exists. Accordingly, we affirm the commission's decision.

*Whether All City Owes Sales and Use Tax*

¶ 27. Because we conclude that the tower is "tangible personal property," we affirm the commission's decision imposing sales and use taxes against All City. By omitting any alternative argument, All City concedes that it is subject to sales and use tax in the event we conclude that the tower owned by Waukesha Tower is personal property.

*By the Court.*—Order affirmed.