DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC,
Petitioner-Appellant,†

v.

WISCONSIN DEPARTMENT OF REVENUE,
Respondent-Respondent.

Court of Appeals

*No. 2006AP589. Submitted on briefs August 8, 2006.
—Decided November 22, 2006.*

2006 WI App 265

(Also reported in 726 N.W.2d 312.)

† Petition to review denied.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert Horowitz* and *Amie Trupke* of *Stafford Rosenbaum LLP*, Madison, and *Peter O. Larsen* of *Akerman Senterfitt*, Jacksonville, Florida.

On behalf of the respondent-respondent, the cause was submitted on the brief of *F. Thomas Creeron III*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Lundsten, P.J., Deininger and Higginbotham, JJ.

¶ 1. LUNDSTEN, P.J. In this appeal, we review a decision by the Tax Appeals Commission disallowing a tax deduction for the portions of bad debts attributable to the sales taxes associated with those debts. Daimler-Chrysler Services North America (Chrysler) filed a claim for the deduction under WIS. STAT. §§ 77.51(4)(b)4. and 77.52(6) (1997–98) with the respondent Department of Revenue.[1] Chrysler appeals the circuit court's order affirming the commission's

_____

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted. Chrysler's claim is for

decision denying the deduction. Chrysler argues that it is entitled to the deduction because it is the "retailer" who "paid" the sales taxes, within the meaning of the statutes. In the alternative, Chrysler argues that it is entitled to the deduction because it is an assignee that acquired the rights to the deduction from the "retailers" who "paid" the taxes. We conclude that the commission correctly denied Chrysler the deduction, and affirm the circuit court's order upholding the commission's decision.

## *Background*

¶ 2. The transactions underlying Chrysler's claim are motor vehicle sales. At the time of each sale, the vehicle purchaser financed the vehicle by entering into an installment contract with a vehicle dealership. The amount financed included the sales tax.

¶ 3. At or shortly after the time of sale, the dealers sold or assigned the installment contracts to Chrysler by executing assignment provisions on the reverse side of the contracts. In exchange for the assignments, Chrysler paid the dealers the full amounts financed, including amounts attributable to sales tax financed as a part of the installment contracts. The dealers subsequently remitted the sales tax attributable to the purchases to the Department.

¶ 4. The purchasers in these particular transactions defaulted on their installment contracts. To the extent Chrysler was unable to recoup the balances due on the contracts, it deemed the debts uncollectible for

purposes of federal and state income taxes. The unpaid balances included a proportional share of the sales tax on the vehicles.

¶ 5. Chrysler filed a claim with the Department seeking a deduction for those proportional shares of the sales tax.[2] The Department denied Chrysler's claimed deduction, and Chrysler sought review before the commission. The commission ruled in favor of the Department, concluding that Chrysler was not entitled to a deduction because it was not the retailer who previously paid the sales tax to the Department. The commission further concluded that Chrysler was not entitled to a tax deduction as an assignee under the contracts at issue. Chrysler petitioned the circuit court for review of the commission's decision, and the circuit court affirmed the commission.

### Discussion

#### A. Level Of Deference Accorded
#### The Commission's Decision

¶ 6. We review the commission's decision, not the circuit court's. *Hafner v. DOR*, 2000 WI App 216, ¶ 3, 239 Wis. 2d 218, 619 N.W.2d 300. This case involves the

---

[2] Both parties repeatedly fail to distinguish between a refund and a deduction for purposes of this appeal. Before the commission, the parties disputed whether Chrysler's claim was for a refund or for a "refund or deduction." The commission declined to determine the issue. We also decline to determine the issue because we deem its resolution unnecessary. WISCONSIN STAT. §§ 77.51(4)(b)4. and 77.52(6) speak only in terms of a deduction. If Chrysler is not entitled to a deduction under those statutes, it certainly is not entitled to a refund under the statutes. For the sake of simplicity, we will generally speak only in terms of a deduction.

commission's interpretation of WIS. STAT. § 77.51(4)(b)4. and 77.52(6). When we review an administrative agency's interpretation or application of a statute, we apply one of the following: great weight deference, due weight deference, or no deference. *Zip Sort, Inc. v. DOR*, 2001 WI App 185, ¶¶ 11–14, 247 Wis. 2d 295, 634 N.W.2d 99.

¶ 7. We give great weight deference to the agency's interpretation when all of the following conditions are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the agency's interpretation is one of long standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.*, ¶ 12. When we give great weight deference to the agency's interpretation, we will sustain a reasonable agency conclusion even if an alternative conclusion is more reasonable. *Id.*

¶ 8. We give due weight deference when the agency has some experience in an area, but has not developed the expertise that necessarily places it in a better position than a court to make judgments regarding the interpretation of the statute. *Id.*, ¶ 13. When we give due weight deference to the agency's interpretation, we will not overturn a reasonable agency decision unless we determine that there is a more reasonable interpretation available. *Id.*

¶ 9. We give no deference to an agency interpretation when any of the following is true: (1) the issue

before the agency is clearly one of first impression; (2) a legal question is presented and there is no evidence of any special agency expertise or experience; or (3) the agency's position on an issue has been so inconsistent that it provides no real guidance. *Id.*, ¶ 14.

¶ 10. Chrysler argues that no deference is due the commission here. Chrysler asserts that the issue is one of first impression because the commission "has never issued a decision dealing with whether the assignee of retail installment contracts who funded payment of the sales tax is entitled to a refund or deduction under the Bad Debt Statutes." "Accordingly," Chrysler argues, "the Commission does not have a long-standing interpretation of the Bad Debt Statutes regarding this specific issue."

■

¶ 11. We conclude that the commission's decision is entitled to at least due weight deference. "Without question, the commission has considerable experience in the administration of the sales-tax statutes, and it has applied the provisions of § 77.52, STATS.—a statute it is charged to enforce and administer—in a variety of situations." *Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 820, 581 N.W.2d 585 (Ct. App. 1998). Likewise, the commission has been repeatedly called upon to interpret and apply provisions in WIS. STAT. § 77.51. *See, e.g., DOR v. River City Refuse Removal, Inc.*, 2006 WI App 34, ¶ 23, 289 Wis. 2d 628, 712 N.W.2d 351; *G & G Trucking, Inc. v. DOR*, 2003 WI App 228, ¶ 12, 267 Wis. 2d 847, 672 N.W.2d 80. We have consistently given at least due weight deference to the commission's interpretation of sales tax statutes.[3]

---

[3] *See, e.g., Bender v. DOR*, 2005 WI App 31, ¶ 13, 278 Wis. 2d 731, 693 N.W.2d 311 (at least due weight); *All City*

¶ 12. In this case, the commission undoubtedly brought its experience and expertise to bear on the task of interpreting WIS. STAT. §§ 77.51(4)(b)4. and 77.52(6). Whatever is meant by the rule that we give no deference to the agency when "the issue before the agency is clearly one of first impression," the rule cannot be referring to every situation in which the agency is called upon to apply a statute to a fact pattern it has not previously addressed. If that were the rule's meaning, deference to an agency decision "would indeed be a rarity." *Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 764, 569 N.W.2d 726 (Ct. App. 1997); *cf. DOR v. A. Gagliano Co.*, 2005 WI App 170, ¶ 28 & n.9, 284 Wis. 2d 741, 702 N.W.2d 834 (requirements for *great weight* deference to agency do not include that agency "has previously applied a statute to the same or substantially similar facts"), *review denied,* 2005 WI 150, 286 Wis. 2d 98, 705 N.W.2d 659 (No. 2003AP3538).

¶ 13. Accordingly, we apply due weight deference, meaning that we will not overturn the commission's decision if it is reasonable and Chrysler's proposed interpretation is not more reasonable.

---

*Comm'cn Co. v. DOR*, 2003 WI App 77, ¶ 11, 263 Wis. 2d 394, 661 N.W.2d 845 (at least due weight); *DOR v. Johnson Welding & Mfg. Co.*, 2000 WI App 179, ¶ 13, 238 Wis. 2d 243, 617 N.W.2d 193 (due weight); *Madison Newspapers, Inc. v. DOR*, 228 Wis. 2d 745, 759, 599 N.W.2d 51 (Ct. App. 1999) (due weight); *Telemark Dev., Inc. v. DOR*, 218 Wis. 2d 809, 821, 581 N.W.2d 585 (Ct. App. 1998) (due weight); *Zignego Co. v. DOR*, 211 Wis. 2d 819, 826, 565 N.W.2d 590 (Ct. App. 1997) (due weight); *see also Susie Q Fish Co. v. DOR*, 148 Wis. 2d 862, 868–69, 436 N.W.2d 914 (Ct. App. 1989) (giving the commission's decision "weight").

## B. *Whether Chrysler Is Entitled To A Deduction Because It Is The "Retailer" Who Previously "Paid" The Tax*

¶ 14. The parties dispute whether Chrysler is a "retailer" who "has previously paid" the sales tax as those terms are used in WIS. STAT. §§ 77.51(4)(b)4. and 77.52(6). Thus, we begin with a review of those statutes.

¶ 15. WISCONSIN STAT. § 77.51(4)(b) defines what is excluded from a retailer's "gross receipts" for purposes of the applicable sales tax:

> 4. In the case of accounts which are found to be worthless and charged off for income or franchise tax purposes, a retailer is relieved from liability for sales tax. *A retailer who has previously paid the sales tax* on such accounts may take as a deduction from the measure of the tax the amount found to be worthless and this deduction must be taken from the measure of the tax in the period in which said account is found to be worthless or within a reasonable time thereafter.

(Emphasis added.) WISCONSIN STAT. § 77.52 is the statute that imposes the retail sales tax at issue here, and subsec. (6) permits the disputed deduction:

> **(6)** A retailer is relieved from liability for sales tax insofar as the measure of the tax is represented by accounts which have been found to be worthless and charged off for income or franchise tax purposes. If *the retailer has previously paid the tax,* the retailer may, under rules prescribed by the department, take as a deduction from the measure of the tax the amount found worthless and charged off for income or franchise tax purposes. If any such accounts are thereafter collected in whole or in part by the retailer, the amount as collected shall be included in the first return filed after such collection and the tax paid with the return.

(Emphasis added.)

129

¶ 16. Chrysler argues that it qualifies for a deduction under the plain language of the statutes because the underlying debts were worthless and properly charged off for income tax purposes and because, as the terms "retailer" and "paid" are used in the above statutes, (1) Chrysler is a "retailer" and (2) Chrysler was the entity that "paid" the tax to the Department.

¶ 17. The parties do not dispute that the debts relating to the installment contracts were worthless and properly charged off for income tax purposes. Furthermore, the Department concedes that Chrysler is a "retailer" within the meaning of the sales tax statutes. But Chrysler's status as a retailer has nothing to do with the taxable sales transactions in this case. With respect to these transactions, Chrysler was not involved in its capacity as a retailer. Rather, the retailer in each transaction was one of the vehicle dealerships.

¶ 18. As to the term "paid," Chrysler does not assert that it was the entity legally obligated to remit the sales tax or that it directly paid the tax to the Department. Nonetheless, Chrysler argues that it "paid" the sales tax. Chrysler begins with the proposition that the vehicle dealers are sales tax collection agents for the Department. According to Chrysler, if the dealers in this case are collection agents for the Department, it follows that Chrysler actually paid the tax to the Department because at the moment of Chrysler's payments to the dealers, the portions attributable to sales tax constituted state funds.

██

¶ 19. We reject Chrysler's interpretation of the statutes. Simply put, Chrysler is not the retailer the statutes are referring to. As the commission explained:

[Chrysler's] characterization does not accurately reflect the language of the statutes, nor does it provide the most reasonable interpretation of them.

. . . [I]t is insufficient to merely demonstrate that a party is a "retailer" in general or that the sales tax "was paid" to the state. Rather, the "retailer," as contemplated by the bad debt statutes, *is the retailer who paid the taxes directly to the state on the purchases and who made the sales to the purchasers that resulted in the bad debts* . . . .

Wisconsin Statutes § 77.51(4)(b)4. refers to the "retailer *who has previously paid the sales tax.*" Section 77.52(6) contains similar language. Thus, notwithstanding Chrysler's assertions to the contrary, the statutes require more than that the entity claiming the deduction falls within the definition of "retailer" under WIS. STAT. § 77.51(13) and that the tax "was paid." The plain language of § 77.51(4)(b)4. provides that the retailer who is entitled to the deduction is the retailer who "paid the sales tax." Moreover, the phrase "paid the sales tax" logically refers to a payment made to the state, the most obvious recipient of sales tax, and not to a third party which then remits the payment to the state. In addition, both provisions refer to the conditions under which a "retailer is relieved from liability for sales tax." *Thus, the "retailer" entitled to a bad debt deduction is the retailer who has "liability" for sales tax.* The most reasonable interpretation of these provisions is that "liability," as used in the bad debt statutes, refers to liability to the state, not liability to a third party pursuant to contract law. The dealers, and not Chrysler, were liable to pay sales taxes to the state. Had the dealers failed to pay such taxes, the state, in the form of the Department, would have sought to recover taxes from [the dealers], not from Chrysler.

(Original emphasis deleted; emphasis added.)

¶ 20. It does not matter whether the dealers in this case may accurately be characterized as sales tax collection agents for the Department.[4] The bad debt statutes do not authorize a deduction for entities that supplied funds to pay the sales tax. Instead, the statutes plainly contemplate a deduction for the retailers who are obligated and who *do* remit the sales tax to the Department. The statutes do not, in any manner, refer to a person or entity that paid the "retailer" who, in turn, remitted the sales tax.[5]

¶ 21. We also agree with the commission that other related statutory provisions can be read to reinforce the commission's interpretation of the bad debt statutes. For example, the commission reasonably concluded that Wis. Stat. § 77.52(4) and (5) supports its construction of the bad debt statutes because § 77.52(4)

---

[4] In support of its contention that the vehicle dealers are sales tax collection agents of the Department for purposes of the bad debt statutes, Chrysler cites our decision in *Midcontinent Broadcasting Co. v. DOR*, 91 Wis. 2d 579, 284 N.W.2d 112 (Ct. App. 1979). Chrysler does not, however, acknowledge that our decision was reversed by the supreme court. *See Midcontinent Broad. Co. v. DOR*, 98 Wis. 2d 379, 297 N.W.2d 191 (1980). Thus, Chrysler does not address whether our "agent" discussion in *Midcontinent* survives the supreme court's opinion.

[5] In a closely related argument, Chrysler contends that even if it is not the retailer who paid the sales tax to the Department, it is still entitled to a deduction because it "provid[ed]" the "funds" that the dealers used to pay the sales tax. This argument is facially flawed because it does not depend on whether Chrysler is a retailer at all. Such a reading improperly renders the "retailer" requirement in the statute surplusage. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 (statutes are to be interpreted reasonably and without surplusage).

and (5) suggests that the "retailer" for purposes of the sales tax in any particular transaction is the retailer who has direct contact with the product purchaser. Section 77.52(4) and (5) provides:

> **(4)** It is unlawful for any retailer to advertise or hold out or state to the public or to any customer, directly or indirectly, that the tax or any part thereof will be assumed or absorbed by the retailer or that it will not be added to the selling price of the property sold or that if added it, or any part thereof, will be refunded . . . .

> **(5)** The department may by rule provide that the amount collected by the retailer from the consumer or user in reimbursement of the retailer's tax be displayed separately from the list price, the price advertised in the premises, the marked price, or other price on the sales check or other proof of sale.

¶ 22. In addition, the commission explained that WIS. ADMIN. CODE § Tax 11.30(2) supports its interpretation of the statute. We agree. That code section provides:

> **(2)** BAD DEBTS. (a) *Deduction from measure of tax.* A retailer is relieved from the liability for sales tax by ss. 77.51(4)(b)4. and 77.52(6), Stats., . . . insofar as the measure of the tax is represented by accounts found worthless and charged off for income tax purposes or, if the retailer is not required to file income tax returns, charged off in accordance with generally accepted accounting principles. *However, only a retailer who has previously paid sales or use tax to this state on the accounts may claim the bad debt deduction* . . . .

> . . . .

133

(d) *Special situations.* 1. A purchaser of receivables is not entitled to a bad debt deduction for the receivables which subsequently become worthless.

(Emphasis added.) The commission reasonably concluded that "[t]his rule makes clear what is implicit in the statutes; namely, that the retailer entitled to bad debt deductions is the retailer who pays the sales tax directly 'to this state.' " The commission also reasonably concluded that the rule expressly barred Chrysler from the deduction it sought.

¶ 23. Chrysler argues that the commission's interpretation of WIS. ADMIN. CODE § Tax 11.30 conflicts with the bad debt statutes.[6] Contrary to the directive of § Tax 11.30, Chrysler believes that the bad debt statutes unambiguously allow it to claim a deduction. The Department counters that Chrysler failed to properly challenge § Tax 11.30 pursuant to the procedure set forth in WIS. STAT. § 227.40.

¶ 24. We disagree with Chrysler's contention that the commission's interpretation of WIS. ADMIN. CODE § Tax 11.30 conflicts with the bad debt statutes. Rather, § Tax 11.30 simply makes express what the commission reasonably concluded is implicit in the statutes: entities in the position of Chrysler cannot claim the deduction because they are not the retailers who paid the sales tax to the Department. Because we see no conflict between the bad debt statutes and the commission's

---

[6] Chrysler makes this argument in the section of its brief addressing the commission's conclusion that Chrysler was not entitled to a deduction as an assignee, but WIS. ADMIN. CODE § Tax 11.30 is relevant to both the question whether Chrysler is entitled to a deduction as the retailer who previously paid the tax and to the question whether Chrysler is entitled to a deduction as an assignee. We choose to discuss § Tax 11.30 in this section of our opinion.

134

interpretation of § Tax 11.30, we need not reach the Department's argument concerning the propriety of Chrysler's challenge to § Tax 11.30.

¶ 25. In sum, the commission reasonably determined that Chrysler was not entitled to a deduction under the bad debt statutes because it was not the retailer who paid the sales tax associated with the debts to the Department. The commission's interpretation is reasonable and Chrysler's interpretation is not more reasonable.

### C. Whether Chrysler Is Entitled To A Deduction As An Assignee

¶ 26. Chrysler argues that it is entitled to a deduction under the bad debt statutes as the dealers' assignee even if it is not so entitled in its own right. As noted above, the dealers sold or assigned the installment contracts to Chrysler by executing assignment provisions on the reverse side of each of the contracts.[7] Chrysler asserts that, as the assignee of the dealers, it stepped into their shoes and acquired all of their rights, including the right to a deduction under the bad debt statutes.

¶ 27. We conclude the commission reasonably determined that Chrysler was not entitled to the deduction as an assignee. Chrysler's proffered interpretation of the statutes as giving an assignee a right to the tax deduction is not more reasonable.

---

[7] The commission thought it immaterial whether the transfers of the contracts from the dealers to Chrysler were characterized as sales or assignments. We will assume, in Chrysler's favor, that the transfers were assignments to the full extent allowed by law.

¶ 28. We first note the commission correctly explained that Chrysler's argument that it stepped into the shoes of the dealers misses the mark. Chrysler does not, and could not, contend that the assignment caused it to be liable for sales tax that had yet to be remitted to the Department. Thus, Chrysler did not step into the shoes of the dealers, and the argument that it did rings hollow.

¶ 29. Chrysler asserts that it should prevail because, under Wisconsin common law, assignees are prevented from asserting the rights of assignors only if expressly prohibited from doing so by statute or agreement of the parties. In support of this assertion, Chrysler cites *NBZ, Inc. v. Pilarski*, 185 Wis. 2d 827, 520 N.W.2d 93 (Ct. App. 1994). That case, however, neither states Chrysler's proposition nor addresses assignments. Rather, *NBZ* states the more general canon of statutory construction that "a statute does not abrogate any rule of common law unless the abrogation is so clearly expressed as to leave no doubt of the legislature's intent." *Id.* at 836. We do not find this canon determinative for a variety of reasons, including that Chrysler does not identify what common law rule is abrogated by limiting a *statutory* tax benefit to the taxpayer who incurred the corresponding *statutory* tax liability.

¶ 30. We find it difficult to imagine that the legislature could have meant to allow assignment of the deduction. The legislature could not have intended to burden the Department with the consequences of Chrysler's interpretation of the statutes. Under Chrysler's theory, the Department would inevitably find itself in the middle of private disputes over whether a valid assignment of the deduction was made. It would be unreasonable to place the Department in this posi-

tion, particularly given that financing contracts may be assigned more than once. What is more reasonable, and consistent with the commission's decision, is that the legislature intended that the taxpayer who reports, is liable for, and remits the sales tax is the one permitted the corresponding deduction.

■

¶ 31. Chrysler refers us to statutes in which the legislature expressly prohibits the assignment of a statutorily granted benefit or privilege. Those statutes include WIS. STAT. §§ 78.20 and 78.75 pertaining to motor vehicle or general aviation fuel tax refunds. But the legislature's choice to expressly prohibit assignments of tax benefits in some tax statutes does not persuade us that the legislature intended to allow such assignments in all others. *See Wisconsin Cent. Farms, Inc. v. Heartland Agric. Mktg., Inc.*, 2006 WI App 199, ¶ 23, 296 Wis. 2d 779, 724 N.W.2d 364 ("We will not render an unreasonable or illogical interpretation of one statute based on nothing more than what another statute might reasonably be read to imply.").[8]

---

[8] Courts in a number of other jurisdictions have addressed similar questions as to the assignability of tax benefits such as those in the bad debt statutes. *See, e.g., DaimlerChrysler Servs. N. Am., LLC v. Arizona Dep't of Revenue*, 110 P.3d 1031, 1033–34, 1037 (Ariz. Ct. App. 2005); *DaimlerChrysler Servs. N. Am., LLC v. Commissioner of Revenue Servs.*, 875 A.2d 28, 29–30, 36–37 (Conn. 2005); *Department of Revenue v. Bank of America, N.A.*, 752 So. 2d 637, 638–39, 643–44 (Fla. Dist. Ct. App. 2000); *In re Appeal of Ford Motor Credit Co.*, 69 P.3d 612, 613–14 (Kan. 2003); *DaimlerChrysler Servs. N. Am., LLC v. State Tax Assessor*, 817 A.2d 862, 863–64, 866–67 (Me. 2003); *Puget Sound Nat'l Bank v. State Dep't of Revenue*, 868 P.2d 127, 129–30 (Wash. 1994). At least one of those courts appears to have canvassed the case law and identified a majority rule

¶ 32. Nothing in the language of the bad debt statutes affirmatively suggests that the legislature intended to permit the type of assignment Chrysler asserts here. To the extent Chrysler is suggesting that the legislative silence makes the statutes ambiguous with respect to assignments, Chrysler's argument runs aground on the rule that "[t]ax exemptions, deductions, and privileges . . . are matters of legislative grace and will be strictly construed against the taxpayer." *Hall Chevrolet Co. v. DOR*, 81 Wis. 2d 477, 484, 260 N.W.2d 706 (1978). Contrary to this rule, Chrysler's approach would greatly expand the class to whom the deduction under the bad debt statutes is available.[9]

¶ 33. As a final assignment argument, Chrysler asserts that the commission's decision conflicts with *Norton v. Supervisors of Rock County*, 13 Wis. 684 (1861), a case involving an action to recover from Rock County the amount of tax certificates, after the sales on which they were issued became void. *Id.* at 686. The commission correctly determined that *Norton* does not assist Chrysler. Even assuming *Norton* is still good law, it is readily distinguishable because the statute at issue

---

across jurisdictions that is consistent with the commission's decision here. *See DaimlerChrysler*, 110 P.3d at 1039–40. Our own non-exhaustive research suggests that this is indeed the majority rule.

[9] Chrysler asserts that the commission's decision undermines the "purpose" of the bad debt statutes by preventing any party from obtaining the benefit of the deduction. This argument is undeveloped, and Chrysler cites no authority for it. Therefore, we decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 646–47, 492 N.W.2d 633 (Ct. App. 1992) (stating that this court will not address issues on appeal that are inadequately briefed).

in *Norton* expressly provided that "in all such cases the county treasurer shall refund the money, with interest, to the purchaser *or his assigns.*" *Id.* (emphasis added). Although the *Norton* court initially suggested that the result might be the same without the statute based on the general rule that "money paid for a consideration which fails may be recovered back," *id.*, the court ultimately left that question open, *id.* at 687–88.[10] Accordingly, we see no conflict between the commission's decision and *Norton*.

¶ 34. For these reasons, we conclude the commission reasonably determined that Chrysler was not entitled to the deduction as an assignee, and that Chrysler's interpretation that the statutes may be read as giving an assignee a right to the deduction is no more reasonable than the commission's interpretation.

### Conclusion

¶ 35. For the reasons above, we conclude that the commission reasonably determined that Chrysler was

---

[10] Specifically, the *Norton* court concluded:

> But however [these questions] might be answered without the statute, we have come to the conclusion that in view of its provisions, an assignment of such a certificate must be held to transfer to the assignee the right to recover back the money paid by the purchaser, in case the sale was void. The law expressly says that the money shall be refunded to the purchaser or his assigns. And the parties, in making an assignment under such a law, must be presumed to have meant to transfer this right, as an incident to the ownership of the certificate. We think, therefore, that the money received by the county on void tax sales, must be held to have been received for the use of the holder of the certificate, whether he be the original purchaser or an assignee, and that it was sufficient for the complaint to allege that the plaintiff was the owner.

*Norton v. Supervisors of Rock County*, 13 Wis. 684, 687–88 (1861).

not entitled to a deduction under the bad debt statutes because it was not the retailer who paid the sales tax associated with the debts to the Department. We further conclude that the commission reasonably determined that Chrysler was not entitled to the deduction as an assignee. Finally, Chrysler's proffered interpretations of the bad debt statutes are not more reasonable than the commission's interpretations. We therefore affirm the circuit court's order upholding the commission.

*By the Court.*—Order affirmed.