# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP1683 |

| | |
|---|---|
| COMPLETE TITLE: | Citation Partners, LLC,<br>　　　　　Petitioner-Respondent-Petitioner,<br>　　v.<br>Wisconsin Department of Revenue,<br>　　　　　Respondent-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 400 Wis. 2d 260, 968 N.W.2d 734
PDC No: 2021 WI App 86 - Published

| | |
|---|---|
| OPINION FILED: | March 1, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 17, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Dodge |
| JUDGE: | Martin J. De Vries |

JUSTICES:
DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the petitioner-respondent-petitioner, there were briefs filed by *Frederic J. Brounder, J. Wesley Webendorfer,* and *DeWitt LLP,* Madison. There was an oral argument by *J. Wesley Webendorfer.*

For the respondent-appellant, there was a brief filed by *Anthony D. Russomanno*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an

oral argument by *Anthony D. Russomanno*, assistant attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP1683
(L.C. No. 2019CV612)

STATE OF WISCONSIN       :       IN SUPREME COURT

**Citation Partners, LLC,**

      **Petitioner-Respondent-Petitioner,**

  **v.**

**Wisconsin Department of Revenue,**

      **Respondent-Appellant.**

**FILED**

**MAR 1, 2023**

Sheila T. Reiff
Clerk of Supreme Court

---

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. ROGGENSACK, J., filed a dissenting opinion, in which ZIEGLER, C.J., and REBECCA GRASSL BRADLEY, J., joined.

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 REBECCA FRANK DALLET, J. Wisconsin imposes a five percent tax on the sale or lease of tangible personal property, including aircraft, as well as on select services. The tax applies to the "sales price"——that is, "the total amount of consideration" paid for a sale, lease, or service, with no deductions for the seller's or lessor's costs. See Wis. Stat.

§§ 77.52(1)(a), 77.51(15b)(a) (2013-14).[1] The sale of aircraft parts and maintenance, however, are exempt from sales tax. See Wis. Stat. §§ 77.52(2)(a)10., 77.54(5)(a)3.

¶2 Citation Partners, LLC owns an aircraft which it leases to third parties, the Lessees. As part of the total amount the Lessees pay to lease the aircraft, Citation Partners charges per-flight-hour rates for aircraft repairs and engine maintenance. Those rates correspond to the amount Citation Partners spends on aircraft repairs and engine maintenance. Citation Partners argues that this portion of the lease payment is tax exempt because it is a sale of aircraft parts or maintenance. We disagree. The per-flight-hour charges for aircraft repairs and engine maintenance are taxable because they are part of the total amount of consideration the Lessees pay to lease Citation Partners' aircraft. We therefore affirm the court of appeals' decision.

I

¶3 Citation Partners owns an aircraft that it leases to the Lessees. The Lessees signed a contract called the Aircraft Dry Lease, defining the responsibilities they and Citation Partners have with regard to the lease of the aircraft. The Dry Lease requires the Lessees to notify Citation Partners if the aircraft needs repairs or maintenance. If so, Citation Partners is responsible for scheduling and paying for all repairs or

---

[1] All subsequent references to the Wisconsin Statutes are to the 2013-14 version.

maintenance.[2] It does not perform any of the repairs or maintenance itself.

¶4 In addition to the Dry Lease, the Lessees entered into a Side Agreement with Citation Partners that sets forth the financial terms for the lease of the aircraft. The Side Agreement includes costs-per-flight-hour that Citation Partners charges the Lessees for aircraft repairs and engine maintenance. Those charges are substantially similar to the amount Citation Partners spends when it purchases aircraft repairs and engine maintenance directly from vendors.

¶5 In 2013, the Legislature passed Wisconsin Act 185, which expanded an existing sales tax exemption to include the sale of aircraft parts or maintenance. See 2013 Wis. Act 185. After the Act took effect, Citation Partners stopped collecting sales tax on the amounts it charged Lessees for aircraft repairs and engine maintenance. In 2017, the Wisconsin Department of Revenue notified Citation Partners that unpaid sales taxes were due on those amounts.

¶6 Citation Partners appealed, claiming that the Act 185 sales tax exemption applied to the Lessees' payments for aircraft repairs and engine maintenance because they were a dollar-for-dollar "reimbursement" to Citation Partners for those costs. The Tax Appeals Commission disagreed, concluding that

---

[2] The Lessees have limited authority to incur up to $5,000 of necessary maintenance and repair work for the aircraft without the prior written approval from Citation Partners. The Lessees will be reimbursed by Citation Partners upon receipt of proof of payment.

the payments were not reimbursements and that Act 185 did not apply to any portion of the payments Citation Partners received from the Lessees. The circuit court[3] reversed the Commission's decision on the grounds that an agency relationship existed between Citation Partners and the Lessees. According to the circuit court, this relationship meant that the payments for aircraft repairs and engine maintenance were tax exempt, since those payments would be tax-free if they were made directly by the Lessees to the vendors.

¶7 The court of appeals reversed. Citation Partners, LLC v. DOR, 2021 WI App 86, ¶35, 400 Wis. 2d 260, 968 N.W.2d 734. In its view, the existence of an agency relationship was irrelevant. Id., ¶32. Instead, it held that the payments were not exempt from sales tax under the plain language of the statutes, which apply sales tax to "the total amount paid on an aircraft lease," without "any deduction for the portions of a lease attributed to aircraft maintenance or engine maintenance, which are the costs and expenses of running an aircraft leasing business." Id., ¶24.

II

¶8 We review the Commission's decision rather than the circuit court's. See Friendly Vill. Nursing & Rehab, LLC v. DWD, 2022 WI 4, ¶13, 400 Wis. 2d 277, 969 N.W.2d 245. In doing so, we defer to the Commission's findings of fact so long as

---

[3] The Honorable Martin J. De Vries of the Dodge County Circuit Court presided.

4

they are supported by substantial evidence, but we review its legal conclusions de novo. Id.

III

¶9 In order to determine whether the Lessees' cost-per-flight-hour payments to Citation Partners for aircraft repairs and engine maintenance are taxable, we analyze the tax statutes. "When interpreting statutes, we start with the text, and if its meaning is plain on its face, we stop there." Clean Wis., Inc. v. DNR, 2021 WI 72, ¶10, 398 Wis. 2d 433, 961 N.W.2d 611. In assessing the plain meaning of the text, "[w]e also consider the broader statutory context, interpreting language consistently with how it is used in closely related statutes." Duncan v. Asset Recovery Specialists, Inc., 2022 WI 1, ¶9, 400 Wis. 2d 1, 968 N.W.2d 661. After analyzing the relevant statutes, we then consider what effect, if any, Citation Partners' arguments about the law of agency has on our interpretation.

A

¶10 Wisconsin imposes a five percent tax on the "sales price" for tangible personal property like aircraft that is sold or leased. § 77.52(1)(a). "[S]ales price" is defined broadly as "the total amount of consideration, . . . for which tangible personal property . . . [is] sold, licensed, [or] leased." § 77.51(15b)(a). The "total amount of consideration," and therefore the "sales price," is calculated "without any deduction for" "[t]he seller's cost of the property or items,

5

property, or goods . . . sold," or "[t]he cost of materials used, labor or service cost, . . . and any other expense of the seller." Id. (a)1.-2. Thus, §§ 77.52(1)(a) and § 77.51(15b)(a) together state that the total amount of consideration paid for a lease——the "sales price"——is taxable, with no deduction for the lessor's costs. See § 77.51(15b)(a)1.-2.

¶11 To calculate the total "sales price" that the Lessees pay Citation Partners to lease the Aircraft, we simply multiply the number of flight hours by the total of all the costs-per-flight-hour.[4] The Side Agreement breaks the total costs-per-flight-hour down into different hourly rates, including a base rate ($724.50/hour), Airplane Repairs ($488/hour), and Engine TAP Costs ($292.26/hour).[5] The Lessees have to pay all of these costs in order to lease the aircraft. The sum of those costs—— including for aircraft repair and engine maintenance——is thus "the total amount of consideration . . . for which [the aircraft is] . . . leased" and is therefore taxable. See § 77.51(15b)(a). If there were any doubt remaining as to whether Citation Partners' costs for aircraft repairs and engine maintenance can be deducted from the sales price, § 77.51(15b)(a) confirms that the "total amount of consideration" must be calculated "without any deduction" for Citation Partners' costs. Id. (emphasis added).

---

[4] In addition, the Lessees also pay $1.00 per rental period to lease the aircraft.

[5] These hourly rates reflect those in the Side Agreement as of January 1, 2015.

6

¶12 Citation Partners argues that the payments are not taxable because they are not consideration at all. That is because, in its view, Citation Partners simply hands the money the Lessees pay for repairs and maintenance over to the vendors that provide those services. But consideration is "any act of the plaintiff from which the defendant . . . derives a benefit or advantage." Consideration, Black's Law Dictionary (11th ed. 2019); see also DOR v. River City Refuse Removal, Inc., 2007 WI 27, ¶50, 299 Wis. 2d 561, 729 N.W.2d 396 (explaining that consideration "may arise when there is a benefit to the promisor or a detriment to the promisee"). And Citation Partners clearly benefits from these payments by passing along to its Lessees the costs of maintaining its aircraft. For that reason, these payments are——by definition——consideration. See River City, 299 Wis. 2d 561, ¶50 (consideration includes "a change in financial position"). Additionally, accepting Citation Partners' argument that it receives no consideration from the Lessees' payments for aircraft repairs and engine maintenance simply because that payment corresponds to anticipated repair costs would render part of § 77.51(15b)(a) meaningless. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). After all, if Citation Partners is right, it is not clear what § 77.51(15b)(a) means when it says that the "sales price"——the "total amount of consideration"——is

7

calculated "<u>without any deduction</u>" for Citation Partners' costs. § 77.51(15b)(a) (emphasis added).

¶13 Citation Partners claims that the costs-per-flight-hour that it receives for aircraft parts and engine maintenance are nevertheless tax exempt. It points to two statutory exemptions related to aircraft: Wis. Stat. § 77.54(5)(a)3., which exempts the sale of "parts used to modify or repair aircraft," and Wis. Stat. § 77.52(2)(a)10., which exempts the sale of "repair, service, . . . and maintenance of any aircraft or aircraft parts." Citation Partners argues that since the plain language of both exemptions covers the costs of aircraft repairs and engine maintenance, then "the reimbursement payments that Citation Partners receives from the Lessees are exempt from sales tax."

¶14 We disagree because neither of these statutory exemptions applies to the payments Citation Partners receives from the Lessees. Simply put, Citation Partners does not sell its Lessees "parts used to modify or repair aircraft," or "repair, service, . . . and maintenance of any aircraft." <u>See</u> §§ 77.54(5)(a)3., 77.52(2)(a)10. It leases its aircraft to the Lessees. And as explained previously, the statutes already make clear that the total amount of consideration paid on an aircraft lease is taxable without any deduction for the Lessor's costs. <u>See</u> §§ 77.51(15b)(a), 77.52(1)(a). When Citation Partners (or the Lessees for that matter) buy aircraft repairs or engine maintenance directly, those transactions are tax-exempt. But when Citation Partners passes those costs along to its customers

as part of the total amount of consideration in a lease, that transaction is taxable.

¶15 For example, if the plane's landing gear breaks and Citation Partners purchases parts from a business in Wisconsin, that transaction is exempt under § 77.54(5)(a)3.  That is because the business sold Citation Partners "parts used to modify or repair [the] aircraft."  See id.  Thus, the seller would not have to charge the usual five percent sales tax.  Likewise, when Citation Partners pays a maintenance company to service the aircraft's engine, that transaction is exempt from the sales tax under § 77.52(2)(a)10.  That is because the maintenance company sold Citation Partners "repair, service, . . . and maintenance of . . . an[] aircraft part[]."  See id.

¶16 Under Act 185 then, sales of aircraft repairs or engine maintenance are tax-exempt.  But when Citation Partners turns around and leases its aircraft, it is not selling aircraft repairs or engine maintenance.  It is leasing an aircraft.[6]  Thus, because Citation Partners' activities fall outside the text of the exemptions, the total lease price is taxable.

---

[6] For this reason, the general rule in § 77.51(15b)(a) and the specific exemptions in §§ 77.54(5)(a)3. and 77.52(2)(a)10. relate to different subject matters and are not in conflict.  These statutes simply apply to different types of transactions.  And because there is no conflict, the general-specific canon is inapposite.  See Kramer v. City of Hayward, 57 Wis. 2d 302, 310-11, 203 N.W.2d 871 (1973); see also Townsend v. ChartSwap, LLC, 2021 WI 86, ¶39, 399 Wis. 2d 599, 967 N.W.2d 21 (Dallet, J., concurring) ("The general-specific canon applies only to statutes that both address the same subject matter and conflict with one another such that harmonizing them is impossible.").

B

¶17 Citation Partners tries to circumvent the plain language of the statutes by arguing that it is the Lessees' agent when it purchases aircraft repairs and engine maintenance. And for that reason, the per-flight-hour reimbursements for aircraft repairs and engine maintenance are akin to the Lessees purchasing those repairs and maintenance directly.

¶18 An agency relationship is a "fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." James W. Thomas Constr. Co. v. City of Madison, 79 Wis. 2d 345, 352, 255 N.W.2d 551 (1977). Thus, in order for an agency relationship to exist, Citation Partners must demonstrate that (1) the Lessees manifested consent to have Citation Partners act on their behalf with respect to aircraft repairs and engine maintenance and (2) the Lessees had the right to control Citation Partners' conduct in that regard. See id.

¶19 Citation Partners relies on the lease documents as "provid[ing] the framework for the agency relationship." It points out that the Dry Lease makes the Lessees responsible for "inspect[ing] the Aircraft" and notifying Citation Partners if "any repair or maintenance should be completed." Additionally, the Dry Lease contains an indemnification provision under which the Lessees are "ultimately responsible for all obligations, expenses and disbursements asserted against Citation Partners arising out of the operation of the Aircraft."

10

¶20 Rather than prove an agency relationship exists, the lease documents reveal the opposite. The Dry Lease states that Citation Partners——not the Lessees——"shall schedule and pay for all repairs and maintenance." And that decision is not "directed" by the Lessees just because they must notify Citation Partners of necessary maintenance upon inspection of the aircraft. Rather, the Lessees' inspection obligation is limited to confirming that the aircraft is flightworthy before using it. Likewise, under the Dry Lease, the Lessees have only limited authority to purchase repairs and maintenance up to $5,000, and are reimbursed by Citation Partners if they do so. Additionally, although the parties entered into a new Side Agreement in 2015 which states that the Lessees are "responsible for fixed and indirect operating expenses and charges attributable to the operation and maintenance of the Aircraft," including "[s]cheduled and unscheduled maintenance," nothing in that Agreement or the Dry Lease suggests that the Lessees control Citation Partners' aircraft-maintenance activities.

¶21 The indemnification provision does not demonstrate otherwise. In that provision, the Lessees agree to indemnify Citation Partners "from and against any and all claims, liabilities, demands, obligations, losses, damages, . . . which may be imposed on, incurred by or asserted against [Citation Partners], in any way relating to or arising out of this Lease, and/or the operation of the Aircraft, . . . ." But standing alone, standard indemnification language like this does not create an agency relationship. To reiterate, an agency

11

relationship requires that one party have the right to control the other's conduct. See James W. Thomas Constr. Co., 79 Wis. 2d 345, at 352. And nothing in this indemnification provision grants the Lessees the right to control Citation Partners. Instead, the Dry Lease and the Side Agreement demonstrate that Citation Partners, the owner of the aircraft, is the one in charge of repairs and engine maintenance, and that the Lessees do not control how Citation Partners fulfills that responsibility.

IV

¶22 Wisconsin imposes a five percent sales tax on the sale or lease of tangible personal property like Citation Partners' aircraft. The tax applies to the total "sales price" of the lease unless there is an applicable exemption. Two such exemptions exist for the sale of aircraft parts and maintenance, but neither apply to the Lessees' payments to Citation Partners for aircraft repairs and engine maintenance. Accordingly, we hold that the total amount of consideration the Lessees pay to lease Citation Partners' aircraft is taxable, and affirm the court of appeals' decision.

*By the Court*.—The decision of the court of appeals is affirmed.

¶23 PATIENCE DRAKE ROGGENSACK, J.  *(dissenting)*.  In 2013 Wis. Act 185, the legislature enacted Wis. Stat. § 77.52(2)(a)10. to exempt the "repair, service, alteration . . . of any aircraft or aircraft parts" and Wis. Stat. § 77.54(5)(a)3. to exempt the "[p]arts used to modify or repair aircraft" from state sales taxes.  This case involves a claimed exemption from state sales taxes for aircraft maintenance services and aircraft parts.  The majority opinion never interprets §§ 77.52(2)(a)10. or 77.54(5)(a)3, which address aircraft repairs and aircraft parts.  It skips over the plain meaning of those two statutes, and instead, it interprets Wis. Stat. §§ 77.51(15b)(a) and 77.52(1)(a), neither of which contains the word, "aircraft," nor does either statute mention aircraft parts or aircraft maintenance.

¶24 I interpret Wis. Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3., the statutes relevant to Citation Partners, LLC's claim.  The plain meaning of those statutes grants Citation Partners the sales tax exemption it seeks.  Because the majority opinion chooses to follow the error-strewn path of the Tax Appeals Commission (TAC), which contravenes the clear statutory direction to exempt the sales price of aircraft parts and aircraft maintenance from state sales taxes, I respectfully dissent.

## I.  BACKGROUND

¶25 Citation Partners, LLC owns a Cessna Citation C12 aircraft that it leases to parties related to the limited

1

liability company and to one unrelated party. The parties operate under two documents: the Aircraft Dry Lease and individual Side Agreements that each lessee signs.

¶26 Section One of the Dry Lease describes the structure of a "Rental Period" for the aircraft's use and return to Citation Partners. It sets one dollar "and other good and valuable consideration" as a lessee's initial payment to Citation Partners. Section Two provides that the lease term is one year, unless terminated earlier by either party with ten days notice. Section Four talks about scheduling use of the aircraft and what is required to do so. Section Five requires Citation Partners to insure the aircraft.

¶27 Section Six places certain geographic and other restrictions on aircraft use and creates obligations for the lessees. Section Nine requires lessees to inspect the aircraft and maintenance records prior to each rental period and to notify Citation Partners and not to operate the aircraft until all repairs and maintenance are completed. Citation Partners schedules and initially pays vendors for repairs and maintenance. Section Nineteen requires that the lease be interpreted in accordance with the laws of the State of Wisconsin.

¶28 The Side Agreements are individual memoranda concerning the financial commitments of lessees to Citation Partners. Each Side Agreement states the hourly charge for flight time, the lessee's obligation to pay a stated amount for aircraft repairs and for engine maintenance and a listing of

2

expenses specific to flights that are allocated only to the lessee who was using the aircraft when the charges were incurred. Accordingly, Citation Partners charges each lessee its proportionate share of aircraft repairs and engine maintenance that Citation Partners initially pays to vendors. However, the Side Agreements contain more components than those two charges.

¶29 Prior to 2015, Citation Partners charged state sales taxes on all components of the Dry Lease and Side Agreements and remitted the collections to Department of Revenue (DOR). Because the effective date of 2013 Wis. Act 185 was July 2014, Citation Partners filed for a refund of taxes collected for periods of time after the effective date of Act 185. DOR granted the refund. Subsequently, however, DOR demanded repayment.

¶30 Citation Partners appealed DOR's decision to the TAC, which agreed with DOR. Citation Partners then sought review in circuit court, which reversed the TAC. The TAC sought review in the court of appeals, which reversed the circuit court. Citation Partners petitioned for review here, which petition we granted.

## II. DISCUSSION

### A. Standard of Review

¶31 We review the TAC's decision, not that of the circuit court or the court of appeals. MercyCare Ins. Co. v. Wis. Comm'r of Ins., 2010 WI 87, ¶25, 328 Wis. 2d 110, 786 N.W.2d 785.

3

¶32 This dispute requires us to interpret and apply statutes. The interpretation and application of statutes present questions of law requiring our independent review. Milwaukee Police Ass'n v. City of Milwaukee, 2018 WI 86, ¶17, 383 Wis. 2d 247, 914 N.W.2d 597; Solowicz v. Forward Geneva Nat'l, LLC, 2010 WI 20, ¶13, 323 Wis. 2d 556, 780 N.W.2d 111. However, as we do so, we benefit from the discussions of the circuit court and court of appeals. Id. We owe no deference to TAC on questions of law. Tetra Tech EC, Inc. v. DOR, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21; see also Patience Drake Roggensack, Elected to Decide: Is the Decision-Avoidance Doctrine of Great Weight Deference Appropriate in This Court of Last Resort?, 89 Marq. L. Rev. 541 (2006).

## B. Statutory Interpretation

### 1. Principles of Statutory Interpretation

¶33 We begin statutory interpretation with examination of the words the legislature chose to use in statutory enactments that are under review here. When we do so, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Teigen v. Wis. Elections Comm'n, 2022 WI 64, ¶50, 403 Wis. 2d 607, 976 N.W.2d 519 (quoting State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 180, 183 (2012) (explaining that the general-specific

4

canon applies to statutory construction "when conflicting provisions simply cannot be reconciled").

¶34 Statutory history is central to a plain meaning analysis. As we have explained, a "review of statutory history is part of a plain meaning analysis" because it is part of the context in which we interpret statutory terms. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, 309 Wis. 2d 541, 749 N.W.2d 581; see also Kalal, 271 Wis. 2d 633, ¶52 n.9 (citing Cass R. Sunstein, Interpreting Statutes in the Regulatory State, 103 Harv. L. Rev. 405, 430 (1989)).

2. Wisconsin Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3.

¶35 2013 Wis. Act 185 enacted two statutes that are relevant here: Wis. Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3. As enacted, § 77.52(2)(a)10. provides in relevant part:

> For the privilege of selling, licensing, performing or furnishing the services described under par. (a) . . . .
>
>     (a) The tax imposed herein applies to the following types of services:
>
> . . . .
>
>     10. Except for the repair, service, alteration, fitting, cleaning, painting, coating, towing, inspection, and maintenance of any aircraft or aircraft parts;

Section 77.52(2)(a)10. is broadly stated. The statute applies to "any aircraft or aircraft parts." (Emphasis added.) There is no statutory limitation on the statute's use that refers to whether the "selling, licensing, performing or furnishing" of aircraft parts or services are set out in a written agreement or performed without a written agreement. There is no limitation

5

on whether the person responsible for that financial obligation pays the vendor directly or pays another who has paid the vendor on that person's behalf.

¶36 Wisconsin Stat. § 77.54 is not a newcomer to Wisconsin statutes. It sets out "General exemptions" from state sales tax. Section 77.54's exemptions are many and diverse, ranging from tractors and machines, § 77.54(3)(a), to the sales price for tickets to elementary and secondary school activities, § 77.54(9), to the sales price of ballet and tap shoes, § 77.54(67)(a)12.a.

¶37 2013 Wis. Act 185 added a relevant exemption to the many-faceted exemptions of Wis. Stat. § 77.54 with the enactment of § 77.54(5)(a)3. The amended statute provides a new exemption:

> The sales price from the sale of and the storage, use or other consumption of;
>
> . . . .

3. Parts used to modify or repair aircraft.
It exempts the "sales price" of aircraft parts from sales taxes, just as § 77.54(67)(a)12.a. exempts the sales price of ballet and tap shoes from sales taxes. Nothing in § 77.54(5)(a)3. limits its exemption when the obligation to pay for aircraft parts is set out in written agreements. Once again, just as the legislature has done for the myriad of exemptions contained within § 77.54, the legislature granted a broad exemption for the sales price of aircraft parts.

¶38 In the dispute before us, the plain meaning of the words the legislature chose when it enacted Wis. Stat.

6

§§ 77.52(2)(a)10. and 77.54(5)(a)3. describe both specific exemptions from sales taxes for the repair and maintenance of aircraft and general exemptions from sales tax for the "sales price" of aircraft parts used to modify or repair an aircraft.

¶39 Prior to the above-described statutory changes, aircraft parts and maintenance were not exempt from state sales tax, unless the aircraft was used by "certified or licensed carriers of persons or property in interstate or foreign commerce," Wis. Stat. § 77.54(5)(a)1., or the aircraft and attachments to aircraft were "sold to persons who are not residents of this state and who will not use such aircraft in this state," § 77.54(5)(a)2.[1] Clearly, the legislature knew how to limit exemptions from sales tax for aircraft if it chose to do so. However, in the enactment of Wis. Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3., the legislature chose to provide the exemption for the "sales price" of "_any_ aircraft or aircraft parts." (Emphasis added.) Accordingly, applying the plain meaning of the words the legislature chose, I conclude §§ 77.52(2)(a)10. and 77.54(5)(a)3. grant exemptions that Citation Partners seeks.

---

[1] 2013 Wis. Act 185 repealed Wis. Stat. § 77.54(5)(a) and renumbered the statute as Wis. Stat. §§ 77.54(5)(a)1. and 77.54(5)(a)2. Act 185 did not change the quoted language.

### 3. TAC Decision

¶40 As required, I review the TAC decision, beginning with its factual statements. In reviewing TAC findings of fact, we apply the "'substantial evidence' standard." Hilton ex rel. Pages Homeowners' Ass'n v. DNR, 2006 WI 84, ¶16, 293 Wis. 2d 1, 717 N.W.2d 166 (citations omitted). Wisconsin Stat. § 227.57(6) requires us to set aside or remand an agency action "if the agency's decision depends on any finding of fact not supported by substantial evidence in the record."[2] Id.

¶41 The test is based on the evidence of record, and whether reasonable minds would conclude that there are material factual findings that underlie TAC's erroneous legal conclusions. Id. In this matter, we are concerned about how TAC's factual findings affected its decision not to apply Wis. Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3. to the transaction under review here. As explained below, I conclude that the TAC's material factual findings that underlie its legal conclusion are not supported by substantial evidence, and therefore, TAC's decision must be set aside.

---

[2] Wisconsin Stat. § 227.57(6) provides: "The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record."

Wisconsin Stat. § 73.015(2) provides that "[a]ny adverse determination of the tax appeals commission is subject to review in the manner provided in [Wis. Stat.] ch. 227."

### a. Factual Errors

¶42 TAC appears to misread the relevant Side Agreements that are in the record. In one of TAC's errors, it says:

> Below the hourly fee descriptions, the Side Agreement clarifies the parties' responsibilities for expenses. The Lessor's list includes scheduled and unscheduled maintenance. The Lessee's list does not include any maintenance related expenses.[3]

This TAC statement is completely incorrect.

¶43 The relevant Side Agreement, dated January 1, 2015, says the opposite of what TAC finds. The Side Agreement actually provides:

> Lessee will be responsible for fixed and indirect operating expenses and charges attributable to the operation and maintenance of the Aircraft. These expenses and costs include, but are not limited to: . . . Scheduled and unscheduled maintenance.[4]

¶44 The TAC's factual inaccuracy leads it to incorrect legal conclusions. TAC errs when it ignores the plain statements in the Side Agreement and says:

> The Dry Lease, with its Side Agreement, does not confer a responsibility for maintenance on the Lessee. To the contrary, it is the Lessor who is expressly responsible for the repairs and maintenance. Because the Lessees are not obligated to maintain the aircraft, they are not reimbursing the Lessor for something paid on their behalf.[5]

As the quote above from Record 6-35 shows, under the Side Agreement, the lessees are obligated to pay for repairs and

---

[3] TAC decision, R. 22-13 (emphasis added).

[4] R. 6-35 (P. App 0053) (emphasis added).

[5] R. 22-15.

maintenance of the aircraft. Therefore, Citation Partners is being reimbursed under the Side Agreement for obligations of the lessees that it paid on their behalves.

¶45 In addition to its misreading of record exhibits, the TAC ignores the Stipulation of Facts that the parties jointly submitted.[6] That stipulation in paragraph 3 states, "the Side Agreements and invoices to lessees expressly provided for dollar for dollar reimbursement by each of the lessees of the Aircraft of both engine maintenance cost and Aircraft maintenance cost."[7] Notwithstanding that factual stipulation the TAC says,

> That starting point, reimbursement, presupposes that each Lessee was obligated to pay for repair and maintenance such that the Lessor, in effect, paid the expenses on behalf of the Lessees. That is not what happens under these Agreements.[8]

However, reimbursement from the lessees for expenses that Citation Partners paid for the lessees is exactly what the parties represented in the Factual Stipulation that they provided to TAC, as well as under other record exhibits.

¶46 Accordingly, TAC's material factual findings are not supported by substantial evidence, and they must be set aside based on documents in the record and the Stipulation of Facts

---

[6] The majority opinion also ignores the parties' Stipulation of Facts that was submitted to and accepted by TAC and is part of the record before us. That Stipulation is critical to understanding the facts that drive the matter that is now before the court.

[7] R. 9-4 (P. App 0061).

[8] R. 22-14.

that the parties provided to the TAC. <u>Pages Homeowners' Ass'n</u>, 293 Wis. 2d 1, ¶16.

### b. Legal Conclusions

¶47 TAC's legal conclusions are grounded in its erroneous factual findings. As with the majority opinion, the TAC does not interpret the statutes that are at issue here. Instead, it interprets Wis. Stat. § 77.51(15b)(a), which does not mention aircraft maintenance, aircraft parts or aircraft in any regard.[9] Nevertheless, TAC concludes that "expenditures for those repairs and maintenance parts and services are not separately exempt when incorporated into the lease payments of a subsequent lease of the entire Aircraft."[10]

¶48 Rather, it is Wis. Stat. § 77.54(5)(a)3. that creates an "exemption" for the "sales price" of "[p]arts used to modify or repair aircraft," and Wis. Stat. § 77.52(2)(a)10. that sets sales of "repair, service, alteration, fitting, cleaning, painting, coating, towing, inspection and maintenance of any aircraft or aircraft parts" outside the scope of state sales taxes. Nothing in either statute changes those exemptions when an aircraft is leased. Stated otherwise, there is nothing in either statute that limits its use when obligations to pay for aircraft maintenance and parts are incurred pursuant to written documents rather than directly to the vendors.

---

[9] The word "aircraft" also does not appear in Wis. Stat. § 77.52(1)(a), which is relied on by the majority opinion. Majority op., ¶10.

[10] TAC decision, R. 22-16 (P. App 0038).

11

¶49 In addition, a plain reading of Wis. Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3. cannot be reconciled with the TAC's use of Wis. Stat. § 77.51(15b)(a). Sections 77.52(2)(a)10. and 77.54(5)(a)3. are more specific to the dispute before the court than are § 77.51(15b)(a)'s general terms. Therefore, §§ 77.54(5)(a)3. and 77.52(2)(a)10., which are more specific in addressing sales taxes on the sales price of aircraft services and aircraft parts, control the outcome of Citation Partners' claim for state sales tax exemption. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012) (explaining "it is a commonplace of statutory construction that the specific governs the general."). Furthermore, this canon is most frequently applied to statutes in which a general prohibition is contradicted by a specific permission, just as we have here. Id.; see also Scalia, Reading Law, at 183. TAC's legal conclusion is based on its interpretation of a broad sales tax statute and is contrary to the plain meaning of Act 185's amendments to sales taxes owed on the sales price for any aircraft parts and services that were granted by Act 185. Accordingly, TAC's decision must be set aside.[11]

¶50 Furthermore, although the plain meaning of the words chosen by the legislature for Act 185's enactments clearly grant the exemption Citation Partners seeks, I note that the Legislative Council Act Memo describes comprehensive use of Act 185's provisions:

---

[11] The majority opinion does not review TAC's decision, either as to the facts TAC found or the reasoning underlying TAC's legal conclusion.

12

> 2013 Wisconsin Act 185 adds a comprehensive exemption for aircraft parts to the list of aviation-related sales and use tax exemptions under existing law, described above. Under the Act, sales of aircraft parts are exempt from sales and use tax regardless of how the aircraft is used. The Act also creates a sales and use tax exemption for the repair and maintenance of any aircraft and aircraft parts.

Although legislative history is not part of a plain meaning statutory analysis, we have used it to confirm a plain meaning interpretation, as I do here. Kalal, 271 Wis. 2d 633, ¶51.

### III. CONCLUSION

¶51 I interpret Wis. Stat. §§ 77.52(2)(a)10. and 77.54(5)(a)3., the statutes relevant to Citation Partners' claim. The plain meaning of those statutes grants Citation Partners the sales tax exemption it seeks. Because the majority opinion chooses to follow the error-strewn path of the TAC, which contravenes clear statutory direction to exempt the sales price of aircraft parts and aircraft maintenance from state sales taxes, I respectfully dissent.

¶52 I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER and Justice REBECCA GRASSL BRADLEY join this dissent.