COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP957**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV730

IN COURT OF APPEALS
DISTRICT II

---

SKECHERS USA, INC.,

    PETITIONER-APPELLANT,

V.

WISCONSIN DEPARTMENT OF REVENUE,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Skechers USA, Inc. (Skechers) appeals from an order of the circuit court affirming a decision of the Wisconsin Tax Appeals Commission (Commission) that disallowed certain deductions Skechers had claimed for royalty payments it made to a wholly owned subsidiary. Skechers contends that the Commission misapplied the "sham transaction" doctrine in disallowing the deductions. Because Skechers has not shown that the Commission erred in its application of the sham transaction doctrine, we affirm the circuit court's order.

## BACKGROUND

¶2     The following facts were found by the Commission and are not disputed by the parties on appeal. Skechers is a corporation formed in 1992 and headquartered in California that sells branded footwear throughout the United States, including in Wisconsin. In 1998, Skechers' outside auditor approached Skechers about ways it might be able to minimize its state tax liabilities. Among other things, the auditor recommended that Skechers create a wholly owned subsidiary to which it would transfer Skechers' intellectual property. Skechers would then license the intellectual property back from the subsidiary in exchange for licensing fees that would reduce Skechers' taxable net income in "separate entity" states like Wisconsin. The auditor estimated that such a restructuring would reduce Skechers' effective state tax rate from 7.69% to 6.44%, a tax savings of approximately 16%. The auditor's recommendation was documented in multiple presentations and reports; none of these materials, or any other evidence presented to the Commission, revealed any rationale for creating the subsidiary other than state tax minimization.

¶3     Skechers decided to move forward with the auditor's recommendation and formed Skechers USA, Inc. II (SKII), a wholly owned subsidiary also headquartered in California, in 1999. Skechers then transferred its domestic intellectual property and $18 million in cash to SKII in exchange for all of SKII's stock. The cash was immediately swept back into Skechers' bank account; SKII's bank account was later closed.

¶4     In connection with the formation of SKII, Skechers and SKII entered into a licensing agreement that required Skechers to pay: (1) quarterly royalties to SKII equal to all of its operating margin in excess of two percent; and (2) interest on the unpaid balance of any royalties. The royalty payments were made solely by journal entries; the funds remained at all times in Skechers' bank account. Skechers and SKII signed a separate management services agreement under which Skechers would provide, and bill SKII for, payroll, legal, human resources, and other services. Skechers claimed tax deductions for the royalty payments and interest. It stopped making the royalty payments in 2005 but did not make any changes to the licensing agreement.

¶5     In 2007, the Wisconsin Department of Revenue (DOR) issued a Notice of Field Audit Action to Skechers reflecting an assessment of corporate franchise taxes due and owing for the 2000 tax year in the amount of $996,637.51. The following year, the DOR issued a similar notice for the 2001-2003 tax years reflecting an assessment in the amount of $2,626,161.24. The DOR contended that the licensing royalty payments from Skechers to SKII in those years were sham transactions. Skechers filed petitions challenging both assessments. The DOR affirmed the assessments insofar as they disallowed the deductions for the royalty payments but reduced the amount of the 2000 assessment to $415,115.69 and the 2001-2003 assessment to $701,576.75 on other grounds. In upholding the

disallowance of the royalty payments, the DOR cited WIS. STAT. § 71.30(2) (2023-24)[1] and Internal Revenue Code (I.R.C.) § 482 which, it explained, allowed for the reallocation of "income among two or more commonly owned or controlled organizations … in order to prevent evasion of taxes or to clearly reflect income of any such organizations."

¶6      Skechers filed petitions with the Commission seeking review of the assessments.  Following a multi-day trial, the Commission issued a decision and order upholding the assessments.  With respect to the disallowance of the deductions for the royalty payments, the Commission took guidance from its decision in *Hormel Foods Corp. v. DOR*, No. 07-I-17, 2010 WL 1367782 (Wis. Tax App. Comm'n Mar. 29, 2010), in which it applied the "sham transaction" doctrine to deductions for royalty payments paid to a wholly owned subsidiary.  In *Hormel*, the Commission focused on the "'substance and realities' of the transactions by focusing on economic substance, business purpose, and a showing that the transaction was not shaped solely by tax-avoidance features."  *Id.* at *20 (footnote omitted).

¶7      In its decision, the Commission stated that Skechers and the DOR agreed that *Hormel* "provides a valid test for the Commission to use in deciding whether to object to or respect transactions between related entities under WIS. STAT. § 71.30(2)."  Under the *Hormel* test, Skechers "had to prove that the transactions upon which the deductions were based were ordinary and necessary," which "required showing the transactions had practical economic effects other

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

than the creation of income tax losses, such as a business purpose and economic substance." *See* **Hormel**, 2010 WL 1367782, at \*22. The Commission concluded that Skechers had not met this burden: it had failed to "identify any reason, other than tax avoidance, that required the creation of SKII" and had failed to show that the licensing transactions had a valid, nontax business purpose or economic substance.

¶8 Skechers filed a petition with the circuit court for review of the Commission's decision under WIS. STAT. ch. 227. Following a round of briefing, the court issued a written decision and order affirming the Commission's decision. It concluded that the commission had "correctly applied the sham transaction doctrine as described in **Hormel**" and rejected Skechers' argument that it fell within an exception to the **Hormel** test because SKII was a viable business entity. The court described "Skechers' conduct in this case [a]s a near textbook example of what WIS. STAT. § 71.30(2) and the sham transaction doctrine aims to prevent."

## DISCUSSION

¶9 On appeal, we review the Commission's decision, not the circuit court's. *See* **Citation Partners, LLC v. DOR**, 2023 WI 16, ¶8, 406 Wis. 2d 36, 985 N.W.2d 761. Our review of the Commission's factual findings is limited: we may not substitute our judgment for the Commission's "as to the weight of the evidence on any disputed finding of fact" and may set aside or remand the Commission's decision only if it "depends on any finding of fact that is not supported by substantial evidence in the record." *See* WIS. STAT. § 227.57(6). Neither party argues there are any disputes of fact relevant to our analysis. Thus, our focus is the Commission's interpretation of WIS. STAT. § 71.30(2) and application of the sham transaction doctrine. We conduct these inquiries de novo

and without deference to the Commission's decision. *See* § 227.57(11); *Citation Partners*, 406 Wis. 2d 36, ¶8. Though we do not review the circuit court's decision, we may benefit from its analysis. *See Sausen v. Town of Black Creek Bd. of Rev.*, 2014 WI 9, ¶5, 352 Wis. 2d 576, 843 N.W.2d 39.

¶10 "Assessments made by the Department of Revenue are presumed correct, and the burden is on the petitioner to prove by clear and satisfactory evidence in what respects the Department erred in its determination." *Xerox Corp. v. DOR*, 2009 WI App 113, ¶34, 321 Wis. 2d 181, 772 N.W.2d 677. Tax deductions "are matters of legislative grace and will be strictly construed against the taxpayer." *DaimlerChrysler Servs. N. Am. LLC v. DOR*, 2006 WI App 265, ¶32, 298 Wis. 2d 119, 726 N.W.2d 312 (citation omitted).

¶11 The statute that governed the transactions at issue in this case, WIS. STAT. § 71.30(2) (2003-04), stated in relevant part as follows:

> ALLOCATION OF GROSS INCOME, DEDUCTIONS, CREDITS BETWEEN 2 OR MORE BUSINESSES. In any case of 2 or more … businesses … owned or controlled directly or indirectly by the same interests, the secretary [of the DOR] or his or her delegate may distribute, apportion or allocate gross income, deductions, credits or allowances between or among such … businesses, if he or she determines that such distribution, apportionment or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades or businesses.[2]

As the Commission and the circuit court recognized, Wisconsin courts have not directly addressed the test to be used under this statute to determine whether to

---

[2] In 2009, the Wisconsin Legislature enacted two statutory provisions, WIS. STAT. §§ 71.30(2m) and 71.80(1m), that govern transactions without economic substance. *See* 2009 Wis. Act 2, §§ 158, 209. As the DOR notes, these statutes, rather than § 71.30(2), would apply to transactions similar to those in this case today.

respect or disregard transactions between related entities. The Commission therefore looked to the test under the sham transaction doctrine as set forth in *Hormel*. Applying that test, the Commission determined that the DOR had correctly disallowed the deductions because Skechers "did not have a valid nontax business purpose for the creation of SKII" or "for entering into the licensing transactions … that generated the royalty deductions" and because the "licensing transactions … did not have economic substance."

¶12  Skechers contends that the Commission misapplied the sham transaction doctrine in requiring both a business purpose and economic substance. It argues that "[t]he Commission erred by failing to consider … the variant of the sham transaction [doctrine] expressly applicable to corporate reorganizations" like its creation of SKII. Relying on several non-Wisconsin cases that have applied the doctrine,[3] Skechers argues that the doctrine here requires a different focus— namely, whether SKII was a viable business entity. Under Skechers' suggested test, the "doctrine does not apply in a corporate reorganization that results in an independently viable entity with economic substance." And it contends that the evidence presented to the Commission showed "that SKII was a viable entity engaged in substantive business activities."

¶13  We are not persuaded by Skechers' arguments. In its decision, the Commission noted that Skechers and the DOR agreed that the test set forth in *Hormel* could be used to determine whether the licensing transactions should be recognized or disallowed under WIS. STAT. § 71.30(2). Our review of the record

---

[3] *See Bass v. Commissioner*, 50 T.C. 595 (1968); *Northern Ind. Pub. Serv. Co. v. Commissioner*, 115 F.3d 506 (7th Cir. 1997); *Sherwin-Williams Co. v. Commissioner*, 778 N.E.2d 504 (Mass. 2002).

supports that assertion. In its closing argument before the Commission, Skechers acknowledged that "this case is controlled ultimately by the Commission's decision in *Hormel*." Consistent with this position, Skechers described *Hormel* as a "well-reasoned decision" in its post-trial brief and focused its arguments on establishing that its royalty payments had a business purpose and economic substance. Though Skechers attempted to distinguish its case from *Hormel*, it did not contend that other sham transaction doctrine standards applied.

¶14 Having agreed before the Commission that *Hormel* provided the applicable test, we decline Skechers' invitation to apply a different test that focuses on whether SKII was an independently viable entity. Skechers cites no Wisconsin law supporting its alternative test, and focusing on a subsidiary's viability and economic activity in general does not align with the text of Wis. Stat. § 71.30(2) and the sham transaction doctrine, which focus more specifically on the proper tax treatment to be accorded to specific transactions. Skechers has not shown that the Commission erred in determining that the *Hormel* test governed the transactions at issue in this case.

¶15 Nor do we see any error in the Commission's application of the test in light of its factual findings. As noted above, *Hormel* required Skechers to prove that "the transactions had practical economic effects other than the creation of income tax losses, such as a business purpose and economic substance." *See Hormel*, 2010 WL 1367782, at *22. The Commission's ultimate conclusions tracked this standard.

¶16 First, it determined that Skechers did not have a valid business purpose for creating SKII. It noted that all of the evidence before and contemporaneous with the formation of SKII pointed to one reason for its

creation—"tax savings." That determination is amply supported by the record, which shows that Skechers' creation of SKII was prompted by a recommendation from its outside auditor as part of a larger strategy to minimize Skechers' state tax liabilities. Next, the Commission examined the specific transfer and license transactions and determined that Skechers had not proven that it had a valid nontax business purpose for them. Skechers' arguments do not establish that the Commission's determination was erroneous. Finally, the Commission examined whether the transactions had economic substance and concluded that Skechers had not established that they did. Here, the Commission pointed to the absence of evidence "indicating any change to business practices, profitability, or intellectual property took place after SKII was created." Skechers has not persuaded us that the Commission erred in making this determination.

¶17 Based on the foregoing determinations, the Commission concluded that the licensing transactions should be disregarded under WIS. STAT. § 71.30(2). Skechers has not shown that the Commission erred in identifying *Hormel* as setting forth the governing legal standards or in applying those standards to the facts in this case.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.